[Civ. No. 21198.   First Dist., Div. One.   Nov. 27, 1963.]

ATKINS, KROLL & COMPANY, LTD., Plaintiff and Appellant, v. BROADWAY LUMBER COMPANY, Defendant and Respondent.

Graham B. Moody, Jr., McCutchen, Doyle, Brown, Trautman & Enersen for Plaintiff and Appellant.

Orrick, Dahlquist, Herrington & Sutcliffe and Robert A. Keller for Defendant and Respondent.

MOLINARI, J.—This is an appeal by plaintiff, Atkins, Kroll & Co., Ltd.,[1] from an order quashing service of process and dismissing a proceeding to confirm an arbitration award on the ground of lack of jurisdiction over defendant, Broadway Lumber Company, a New Mexico corporation.[2]

### Question Presented

Did Broadway, a foreign corporation, submit to the jurisdiction of the courts of this state when it agreed to submit to arbitration under the laws of California?

---

[1]Hereinafter referred to as ''Atkins.''

[2]Hereinafter referred to as ''Broadway.''

*The Record*

On September 23, 1958, Atkins and Broadway entered into a written contract whereby the former agreed to sell to the latter certain plywood doorskins to be shipped to the Walker Door Manufacturing Co.[3] in Dallas, Texas. The said contract contained the following provision: "This contract and all matters relating to the performance thereof shall be governed by the laws of the State of California. Any controversy or dispute respecting this contract, upon the demand of either Buyer or Seller, shall be submitted to arbitration before a committee of the Foreign Commerce Association of the San Francisco Chamber of Commerce under its rules, the decision being final and binding on both Buyer and Seller."

On October 30, 1962, Atkins filed a petition entitled an "Application For Order Affirming An Arbitration Award" in the Superior Court of the City and County of San Francisco. The said petition alleges the execution of said contract, a copy of which is attached thereto. The petition alleges, further, that a controversy having arisen out of said contract, Atkins made demand for arbitration pursuant to said contract; that the dispute was submitted to arbitration before the Foreign Commerce Association of the San Francisco Chamber of Commerce; that an Arbitration Committee was appointed by said Association; and that said Committee made its award on September 10, 1962, against Broadway, and in favor of Atkins, for the sum of $12,205.38, representing the unpaid amount of an invoice for plywood shipped to Walker. The petition prayed for an order confirming said award and for a judgment in conformity therewith. The hearing of said petition was noticed and a copy of said notice and of said petition were forwarded to Broadway in Albuquerque, New Mexico, by registered mail. Broadway thereupon appeared specially and moved the said superior court for an order quashing service of said petition and notice of hearing, and for an order dismissing the action. The motion was based solely upon the ground that the said superior court lacked personal jurisdiction over Broadway.

Broadway's said motion was accompanied by an affidavit which stated substantially as follows: that Broadway is a corporation with its principal place of business in Albuquerque, New Mexico; that Broadway has not had and does not currently have any offices, branches, factories, warehouses, mills or other facilities in California; that Broadway does not em-

---

[3]Hereinafter referred to as "Walker."

ploy any residents of California nor are any employees designated or authorized to perform duties or engage in activities in California; that Broadway has not and is not now engaged in the solicitation of business by mail or by any other means in California; that the plywood doorskins in question were not ordered for the use of Broadway but were to be shipped to Walker for its use; that a dispute arose regarding the quality of the doorskins and their utility for the purposes of Walker; that on March 31, 1959, Atkins issued credit memorandums to Broadway in the amount of $86,046.58 for doorskins which had been delivered by Atkins to the Metro Warehouse in Dallas, but had not been used by Walker; that Atkins subsequently made demand upon Broadway for $24,419.16 for doorskins allegedly missing from the Metro Warehouse, the responsibility for which is denied by Broadway; that in letters dated March 9, 1962, and March 26, 1962, Broadway was advised by the Foreign Commerce Association of the San Francisco Chamber of Commerce that Atkins formally requested arbitration before the Association; that Broadway advised said Association that it did not consent to arbitration and that the Association had no jurisdiction to arbitrate; that Broadway did not appear or in any way participate in any proceedings conducted by the Association regarding this demand; that Atkins' claim is not based on any contract, but solely on the alleged shortage of material in said warehouse; and that Broadway is not party to any arrangements between Atkins and Metro Warehouse.

Atkins did not file or submit any affidavit in opposition to that filed by Broadway. The court below granted Broadway's motion, from which order Atkins now appeals.

### CONTENTIONS

Atkins contends that an agreement to submit to arbitration under the laws of California is an agreement to submit to the jurisdiction of the courts of this state to enter judgment on an award under the agreement. Atkins asserts, further, that it was under no obligation to seek an order compelling arbitration, but that the arbitration provision in the contract was self-executing once one of the parties made a demand for arbitration.

Broadway, in turn, asserts that it has not consented to in personam jurisdiction; that it was not doing business in California; and that, in any event, the contract in question had terminated prior to the time the dispute between the parties

arose. Broadway argues, moreover, that Atkins has the burden of proving the existence of facts which establish jurisdiction over Broadway, and that, by failing to present an affidavit in support of its position and in opposition to Broadway's affidavit, Atkins failed to meet its burden.

Before entering into a discussion of the applicable legal principles it should be noted that no contention is made by Atkins that Broadway is doing business in California. Jurisdiction over Broadway is claimed on the basis of the agreement to submit to arbitration under the laws of California. We need not discuss, therefore, whether Broadway is subject to local process on the basis of ''doing business in this state'' as this term has been defined and interpreted by the reviewing courts.

## The Agreement to Arbitrate

The immediate inquiry is whether, by agreeing to submit to arbitration under the laws of California, Broadway agreed to submit to the jurisdiction of the courts of this state. This same question was posed in *Frey & Horgan Corp.* v. *Superior Court* (1936) 5 Cal.2d 401 [55 P.2d 203], wherein the parties had entered into a contract containing the identical arbitration provisions as in the instant case, and providing for submission to arbitration before the very same committee of the Foreign Commerce Association of the San Francisco Chamber of Commerce. There, the petitioner filed its petition in the Superior Court of the City and County of San Francisco for an order directing arbitration to proceed under authority of section 1282 of the Code of Civil Procedure.[4] Thereafter, service was made upon the Frey & Horgan Corporation by delivery to the secretary of that corporation, in the City of New York, of a written notice, authorized by section 1282, that the application and motion for the desired order would be presented to the court at a time stated. Frey & Horgan Corporation then appeared specially to move the trial court for an order quashing service of the notice of motion. The trial court denied the motion to quash and directed that the arbitration proceed. The *Frey &*

---

[4]§ 1282 then provided, in pertinent part, that an aggrieved party may petition the superior court for an order directing that such arbitration proceed in the manner agreed upon; that five days' written notice be given the party in default; that the court shall hear the parties, and upon being satisfied that the making of the agreement or such failure to comply therewith is not in issue, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

Horgan Corporation then petitioned the Supreme Court for a writ of prohibition commanding that the superior court desist from further proceedings. In denying the writ, the Supreme Court held that notice of a petition for an order directing arbitration to proceed constitutes "process"; and that while, as a general rule, in personam jurisdiction may not be acquired over a defendant in an action by service of notice or other process outside the territory or state in which the forum exists (citing *Pennoyer* v. *Neff*, 95 U.S. 714 [24 L.Ed. 565]), a contract containing provisions which stipulate that disputes arising thereunder should be submitted to arbitration before the designated committee and which provides that " '[t]his contract in all respects shall be governed and construed by the laws of the State of Claifornia' " (p. 403), constitutes an agreement to submit to the jurisdiction of the California courts. The rationale of *Frey & Horgan* is that such a contract was an agreement to cooperate in the arbitration proceedings; that section 1282 should be read into such contract as a part thereof; and that, accordingly, it was an agreement to submit to the jurisdiction within which the arbitration must operate in order to give it the effect contemplated by the contract and by the law.

The rule of the *Frey & Horgan* case was codified by section 1293 of the Code of Civil Procedure in 1961,[5] and became effective on September 15, 1961. In view of the rule against retroactive application, unless the Legislature has expressly so declared (§ 3; see *DiGenova* v. *State Board of Education*, 57 Cal.2d 167, 172-175 [13 Cal.Rptr. 369, 367 P.2d 865]), there may be some question as to whether section 1293 applies to contracts executed prior to its effective date. It is apparent, however, that the rule announced in *Frey & Horgan* is applicable to contracts entered into prior to September 15, 1961, and that section 1293 is but a codification of the principle declared in *Frey & Horgan*. It is clear, therefore, that any contract entered into while *Frey & Horgan* was decisional law was made in contemplation of, and subject to, the rule therein declared. Accordingly, no vested rights

---

[5] § 1293 provides: "The making of an agreement in this State providing for arbitration to be had within this State shall be deemed a consent of the parties thereto to the jurisdiction of the courts of this State to enforce such agreement by the making of any orders provided for in this title and by entering of judgment on an award under the agreement."

All statutory references hereinafter are to the Code Civ. Proc. unless otherwise indicated.

would be impaired or new liabilities imposed even if section 1293 be given retrospective effect. Suffice it to say, however, the principle under discussion was the law of this state prior to the time it was given statutory expression.

It is argued by Broadway that *Frey & Horgan* is not controlling in the instant case because here Atkins is seeking to confirm an arbitrators' award, while in *Frey & Horgan* the petitioner sought to compel arbitration. The significance of an order to compel arbitration was discussed in *Brink* v. *Allegro Builders, Inc.* (1962) 58 Cal.2d 577 [25 Cal.Rptr. 556, 375 P.2d 436]. In that case, plaintiffs and defendant entered into a contract which contained the following arbitration clause: " 'As between the parties hereto, all questions as to the rights and obligations arising under the terms of the contract, the plans and specifications are subject to arbitration. In case of dispute either party hereto may make a demand for arbitration by filing such demand in writing with the other. . . . Should either party refuse or neglect to appoint said arbitrator or to furnish the arbitrators with any papers or information demanded he or they are empowered by both parties to proceed ex parte. . . .' " (Pp. 578-579.) The question before the court was whether, in the face of the above contractual provisions, either party could unilaterally proceed with arbitration without first resorting to the superior court for an order compelling arbitration. The court held that section 1282 was only designed to afford a remedy where the parties had not provided for the contingency that had arisen, and that when the arbitration clause is self-executing no court action is required in order to proceed with the arbitration. (See also *Government Employees Ins. Co.* v. *Brunner* (1961) 191 Cal.App.2d 334 [12 Cal.Rptr. 547].)

Broadway does not maintain that an action to compel was needed in order to initiate the arbitration procedures, but argues that even though a party who enters into a contract which provides for arbitration in California has indicated a willingness to submit to the jurisdiction of the California courts, this consent covers only the arbitration process itself, and that once the arbitration proceedings culminate in an award, the jurisdictional waiver is no longer operative. It is thus contended that even though the arbitration agreement is self-executing, so that the petitioner need not bring an action to compel arbitration, the consent to jurisdiction recognized in *Frey & Horgan*, and codified in section 1293, should apply only to a proceeding seeking to compel arbitration and

should not be extended to one asking for confirmation of the award.

No case has been found or cited which supports Broadway's argument. We are satisfied, however, that such contention is without merit. It is conceded that, as determined in *Brink*, the arbitration agreement is self-executing and that, therefore, no court aid is required to invoke the arbitration clause. In the instant case, the court aid sought is not to enforce the agreement to arbitrate, which is self-executing, but to *enforce the award*, made by the arbitrators acting pursuant to the agreement, by having it reduced to a judgment. (See §§ 1285 to 1287.6.) The contract in the case at bench affirmatively refers to the right of arbitration with particular reference to the laws of California. Under the *Frey & Horgan* case the laws of this state became a part of the contract. ▮ Moreover, ''[t]he agreement to submit the dispute to the arbitration committee is an agreement to cooperate in that proceeding,'' and ''an agreement to submit to the jurisdiction within which the arbitration must operate in order to give it the effect contemplated by the contract and by the law.'' (*Frey & Horgan Corp.* v. *Superior Court, supra*, pp. 404-405.) ▮ That ''effect,'' we are satisfied, includes not only the enforcement of arbitration agreements and the conduct of arbitration proceedings, but the enforcement of the award resulting from such arbitration in the manner provided by California law. To hold otherwise would be tantamount to a refutation of the principle of the *Frey & Horgan* case, and would amount to an emasculation and frustration of the purpose and objectives of the arbitration laws of this state.

## The Burden of Proof

▮ The burden of proof was on Atkins to establish that the California courts had jurisdiction over Broadway. (*Holtkamp* v. *States Marine Corp.*, 165 Cal.App.2d 131, 137 [331 P.2d 679]; *Martin Bros. Elec. Co.* v. *Superior Court*, 121 Cal.App.2d 790, 794 [264 P.2d 183]; *Briggs* v. *Superior Court*, 81 Cal.App.2d 240, 251 [183 P.2d 758].) In the present case the motion to quash was submitted and determined upon the verified petition of Atkins seeking a confirmation of the award and the affidavit of Broadway in opposition thereto. No counteraffidavit was filed by Atkins. Motions are usually made and determined on affidavits alone. (*Beckett* v. *Kaynar Mfg. Co., Inc.*, 49 Cal.2d 695, 698, fn. 3 [321 P.2d 749]; *Skouland* v. *Skouland*, 201 Cal.App.2d 677,

678 [20 Cal.Rptr. 185]; *Fuller* v. *Lindenbaum,* 29 Cal.App. 2d 227, 230 [84 P.2d 255] (motion to quash summons); see § 2009.) ▮ A verified pleading is itself an affidavit and may be considered as such. (2 Cal.Jur.2d, Affidavits, § 4, p. 616; *Albertson* v. *Raboff,* 185 Cal.App.2d 372, 388 [8 Cal. Rptr. 398]; *Hoffman* v. *City of Palm Springs,* 169 Cal.App. 2d 645, 648 [337 P.2d 521].) Thus, a verified complaint may be considered in support of an application for an injunction (*Bank of America* v. *Williams,* 89 Cal.App.2d 21, 23 [200 P.2d 151); and as a counteraffidavit on a motion for change of venue. (*Quick* v. *Corsaro,* 180 Cal.App.2d 831, 835 [4 Cal. Rptr. 674]; 1 Witkin, Cal. Procedure, § 260, p. 781, citing cases.) ▮ Upon analogy, we see no reason why a verified petition should not be treated as a counteraffidavit on a motion to quash service of process, provided it is otherwise sufficient to meet the factual challenge of the defendant's affidavit. It appears, moreover, that the verified complaint has been treated as the equivalent of an affidavit on motions to quash service of summons. (See *Fuller* v. *Lindenbaum, supra,* pp. 230-231, where no counteraffidavits were presented and the motion was decided upon the issues joined by the first amended complaint and the affidavits of the defendants; see also, *Martin Bros. Elec. Co.* v. *Superior Court, supra,* p. 791; and see *Briggs* v. *Superior Court, supra,* p. 251.) It should be noted, moreover, that in *Quick* it was held that where the defendant's affidavit did not deny or otherwise meet the essential allegations in the complaint as they related to venue, it was insufficient to warrant the granting of a motion for a change, and the complaint determined jurisdiction, even though unverified.

▮ In considering an order made on affidavits involving the decision on a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review. (*Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, 508 [289 P.2d 476, 37 A.L.R.2d 1349.) ▮ Accordingly, where an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contentions of the prevailing party establish not only the facts stated therein, but also all facts which reasonably may be inferred therefrom, and that where there is a substantial conflict presented by the affidavits, the determination of the controverted facts by the trial court will not be disturbed on appeal. (*Beckett* v. *Kaynar Mfg. Co., Inc., supra,* p. 699; *Griffith Co.* v. *San Diego College for Women, supra,* p. 508.) ▮ Turning to

the affidavits in the instant case we find, however, that there is no factual conflict between them in the essentials having to do with the issue before us. Broadway admits that a dispute arose regarding the quality and utility of the doorskins sold to Walker, and that the Foreign Commerce Association of the San Francisco Chamber of Commerce advised Broadway that Atkins had formally requested arbitration before the Association. It is further admitted by Broadway, in its affidavit, that it did not consent to such arbitration. Said affidavit asserts therein that the Association did not have jurisdiction to arbitrate and that Atkins' claim is not based on contract, but on an alleged shortage of material arising out of an arrangement between Atkins and Metro Warehouse to which Broadway was not a party. These last assertions are not statements of evidentiary facts, but are conclusions insofar as the question of jurisdiction and the stated basis of Atkins' claim are concerned, and, at best, a statement of ultimate fact insofar as the averment that Broadway was not a party to any arrangements between Atkins and Metro. Opposed to Broadway's affidavit is Atkins' verified petition which alleges the execution of the contract between the parties and has attached to it a copy thereof. The execution of this contract is not denied by Broadway in its affidavit, although its existence and execution is not expressly admitted. Its execution is, however, conceded by Broadway in its brief. Moreover, Broadway relied on the very same contract when, at oral argument, it urged that we consider paragraph 17 thereof in determining the question before us. (We shall hereinafter discuss this portion of the contract.) Alluding once again to the petition, it should be noted that it, too, avers that a controversy has arisen between the parties, asserting that the same arises out of the contract, and alleges further that the dispute was referred to the aforesaid Association which proceeded with arbitration and the making of its award. It is not denied by Broadway that the arbitration took place and that an award was made. Broadway stands on its contention that, although such arbitration by the Association was requested by Atkins, Broadway refused to participate on the ground that the Association had no jurisdiction to arbitrate.

It is readily apparent that the question presented to the trial court was one of law based upon undisputed facts, and that the prime consideration was the interpretation of the contract between the parties. The instant agreement is one

the construction of which is based upon its terms without the aid of extrinsic evidence. In such a case, the construction is one of law and we are not bound by the trial court's interpretation, but it is our duty to make the determination in accordance with applicable principles of law. (*Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825]; *Meyer* v. *State Board of Equalization*, 42 Cal.2d 376, 381 [267 P.2d 257]; *Estate of Black*, 211 Cal.App.2d 75, 83 [27 Cal.Rptr. 418].) ▮ These principles we have already discussed above. Applied to the instant case they lead to the following conclusion: that pursuant to the terms of the contract the parties agreed that all matters relating to its performance were to be governed by the laws of California; that any dispute arising thereunder was to be submitted to arbitration before a designated arbitrator in California; that said agreement was self-executing; and that such an agreement submitted to the jurisdiction of the California courts the right and power to effectuate and enforce such arbitration in the manner and pursuant to the remedies provided by the laws of this state.

### Did the Contract Terminate Before the Dispute Arose?

Broadway argues that, in any event, the instant contract terminated prior to the time the dispute arose and that therefore the contract cannot be urged as a basis for an agreement to submit to arbitration. This argument is predicated upon section 17 of said contract, which provides as follows: "This contract may be filled by two or more partial shipments at Seller's option and each shipment or delivery shall constitute a distinct and separate contract. Buyer shall not be entitled to reject any undelivered portion of the goods by reason of a valid rejection of any other portion thereof. In event of valid rejection, this contract is to be terminated to the extent of the quantity affected without any further right or claim on the part of either party." With respect to this contention, it suffices to note that the factual question having to do with a "valid rejection" was not tendered by the affidavits. The affidavit of Broadway acknowledges that a dispute has arisen as to the quality and utility of the doorskins. It appears from Broadway's affidavit that Atkins was amenable to a return of the skins delivered, and that the claim which Atkins wanted arbitrated was whether Broadway was responsible for the missing door skins. ▮ It is well established that where parties have agreed that all questions as to rights and obligations under an agreement are subject to arbitration, *all* disputes pertaining to the meaning, interpretation and applica-

tion of any clause in the agreement, *even those that prima facie appear to be without merit*, are the subject of arbitration. (*Brink* v. *Allegro Builders, Inc., supra,* 58 Cal.2d 577, 579; *Posner* v. *Grunwald-Marx, Inc.,* 56 Cal.2d 169, 184 [363 P.2d 313].)

To contend that because a contract may be deemed terminated upon the occurrence of a specified contingency, rights which may have accrued under said contract may not be adjudicated is to cavil with the fundamental principles of contract law. To assert, moreover, that the language of the contract, reading, "this contract is to be terminated to the extent of the quantity affected without any further right or claim on the part of either party" is to be interpreted as meaning that rejected goods are not to be returned to the seller or are not recoverable by him is to stretch credulity beyond its tensile strength. The responsibility for the return or the safeguarding of the goods in question is a matter for arbitration because it is a "controversy or dispute respecting this contract. . . ." Whether the arbitrators acted properly as to any determination they may have made in this or any other regard, as well as the question as to whether the arbitrators went outside the scope of the contract, are all matters which may be inquired into upon the proceedings to confirm the award. Under the laws of this state, Broadway has the right to respond to the petition for confirmation of the award, and upon a proper showing may correct or vacate the award. (§§ 1285.6 to 1287, incl.) It may also seek a dismissal of the proceeding as to any person whom the court determines not to have been bound by the arbitration award and was not a party to the arbitration. (§ 1287.2.)

The order is reversed.

Bray, P. J., and Sullivan, J., concurred.