[Civ. No. 403.   Fifth Dist.   Apr. 29, 1965.]

IRWIN KALLMAN, Plaintiff and Appellant, v. CLAUDE M. HENDERSON, Defendant and Respondent.

Vizzard, Baker, Sullivan & McFarland, James Vizzard, Wyman, Finell & Rothman, Erwin H. Diller and Allan B. Goldman, for Plaintiff and Appellant.

Keatinge & Sterling, Jesse D. Miller, Ralph B. Perry III and Roland S. Woodruff for Defendant and Respondent.

CONLEY, P. J.—The plaintiff, Irwin Kallman, a New York lawyer, appeals from the order of the court granting the motion of Claude M. Henderson, one of the defendants, to set aside a default judgment against him in the sum of $62,037.50 compensatory damages, $25,000 exemplary damages, and costs of suit, obtained on October 28, 1960.

In the complaint, Mr. Kallman sued respondent, Claude M. Henderson, and also S. E. Henderson and Zona Eckert, copartners, doing business under the firm name and style of Henderson and Eckert, and General Motels Company, a California corporation, for fees alleged to have been earned by him for procuring a contract between General Motels Company (Claude Henderson being its vice-president) and an organization known as Jowol Conduit, Inc. for the purchase by the latter of the Sands Garden Motel in Bakersfield for the sum of $800,000, with further provision that the purchaser would lease the property back to the seller for a term of 99 years at a rental of $120,000 per year. It is alleged that the contract provided that it should be subject wholly to the laws of the State of New York. The agreement specifically provided for a commission of $14,250 to Mr. Kallman; it is alleged that the contract also contemplated the payment to him of an additional commission of $47,787.50 at the time of the proposed execution of the 99-year lease, and that as the defendants "as sellers of said property, did willfully and arbitrarily, and without reason, justification or excuse, refuse to perform their agreement . . . ," the defendants were further liable in the sum of $25,000, as exemplary damages. The copartners, S. E. Henderson and Zona Eckert, a father and daughter, are unrelated to Claude M. Henderson; they were allegedly the owners of the General Motels Company, which, in turn, owned the Sands Garden Motel; references hereafter to Mr. Henderson refer to the respondent, Claude M. Henderson.

The record establishes that General Motels Company and the partnership of S. E. Henderson and Zona Eckert were properly served. It appears that the attorneys for the plaintiff requested a law firm in Los Angeles, consisting of Messrs. Dolley, Jessen & Painter, to appear for the defendants, Claude M. Henderson and General Motels Company, as that firm of lawyers was known to have represented the General Motels Company's interests in other litigation.

We shall refer at greater length in a later part of the opinion to the question whether or not Claude M. Henderson authorized the Los Angeles attorneys to represent him personally in the action as well as the defendant, General Motels Company. In any event, the legal firm did in fact file a demurrer on behalf of Mr. Henderson personally, and General Motels Company, and it also made timely demand for the posting of a nonresident bond as security for costs by Mr. Kallman (Code Civ. Proc., § 1030).

Before the demurrer could be argued, the Los Angeles firm served plaintiff's attorneys with a document entitled "Notice of Withdrawal of Attorneys," which stated:

"You AND EACH OF YOU WILL PLEASE TAKE NOTICE that defendants GENERAL MOTELS COMPANY and CLAUDE M. HENDERSON have terminated the employment of DOLLEY, JESSEN & PAINTER as their attorneys in the above-entitled cause, and said attorneys no longer act as such attorneys herein; you will please govern yourselves accordingly."

Thereafter, Messrs. Vizzard, Baker & Sullivan served a "Notice of Hearing of Demurrer and Notice to Obtain Attorneys" upon the Los Angeles firm, and mailed copies to Claude M. Henderson at two addresses which had been previously used by Messrs. Dolley, Jessen & Painter in serving their Notice of Withdrawal of Attorneys. The affidavit in support of his motion to set aside the default states that Claude Henderson did not reside at either of the two addresses, that he was then a resident of Florida and later of Washington, D.C., and that he never received any of these notices. Thereafter, the demurrer was called up for argument by the plaintiff; it was argued or submitted in the absence of any attorney representing Claude M. Henderson or the General Motels Company, and was overruled. Notice of the overruling of the demurrer and of the right given to the demurring defendants to answer within 15 days was mailed by counsel for the plaintiff to the Los Angeles firm of attorneys and to Mr. Henderson at the addresses above mentioned; in the record, he says that

he never received any copy of a notice overruling the demurrer. Affidavits relative to the absence of military service were prepared and filed by Vizzard, Baker & Sullivan and the defaults of Henderson and General Motels Company were entered on February 4, 1959.

On March 20, 1959, an answer was filed by S. E. Henderson and Zona Eckert. After the taking of several depositions and a pretrial conference of the nondefaulting parties, a stipulation was entered into between counsel for such parties that a judgment could be entered in favor of the defendants, S. E. Henderson and Zona Eckert. On October 31, 1960, a judgment in their favor was entered accordingly, but the judgment was also against the defaulting defendants, Claude M. Henderson and General Motels Company, in the sum of $62,037.50 as total compensatory damages, $25,000 as exemplary damages, and $21.85 as costs of suit.

On January 17, 1964, Claude M. Henderson, acting through an attorney, filed written notice that on the 19th of February, 1964, he would move to vacate and set aside the default judgment against him on the grounds: (1) that the judgment was taken without due process of law, (2) that it was founded upon a complaint which does not state a cause of action against him, (3) that it was a product of fraud practiced upon the court by plaintiff and his attorneys, ''which deception though intrinsic is so unconcionable [sic] as to warrant its expungment [sic] upon the courts own motion,'' (4) that the judgment is over five times as large in amount as the plaintiff could possibly claim under the clear wording of the basic contract, and (5) that no fair adversary trial was held and that he had at all times a valid legal defense on the merits, but was prevented from urging such defense because of extrinsic fraud, mistake and accident.

The notice of motion was based upon a comprehensive affidavit of Mr. Henderson; the grounds of the motion, as set forth above, are repeated. The affidavit, which contains numerous specific allegations of fact as well as arguments concerning constitutional rights and the impact of the procedural law, includes the following:

''. . . The jurisdictional fact of the matter, . . . , is that deponent was never under the in persona jurisdiction of the court for the purposes of this action. And this circumstance is here advanced as a further element of want of due process, not to be prejudiced by the above tendered bases for vacatur. No process was ever served upon me in this action. Neither the summons nor the complaint was ever delivered to me in

any manner, shape or form. As witness plaintiff's memorandum for costs on file herein, only one service of process occurred, to wit: upon 'an officer of General Motels Co.' This 'officer' happened to be Mr. Bruni, the President of the company. That process came into the hands of the firm of attorneys above mentioned, viz.: Dolly, [*sic*] Jessen & Painter, for the sole purpose of representing the said served defendant General Motels Company. Through the happenstance of what is virtually a pure typographical error, the demurrer projected by that firm included recitation of your deponent as one of the parties for whom the subscribers were acting. It should here be emphasized that by no other manner, means or device was an induction of deponent into this litigation instrumentalized. Not only was there never any service of summons and/or complaint upon me, not only is the file of this action and the Clerk's docket entries thereof totally barren of any affidavit or certificate or minute reflecting service of any process upon deponent, but there never was any physical appearance of or participation by me in this action, nor any dealings with attorneys acting therein other than such as would presumptively attend my relationship to the General Motels Company. I here unequivocally declare that it had never been my purpose, intent or act to voluntarily appear in this action, nor to authorize the making of any appearance in my behalf (as distinguished from an appearance on behalf of the General Motels Company of which I was an officer). Accordingly, aside from the aforestated grounds for impugnment of the judgment as a matter of law, it must be set aside and nullified as against me for want of service of process or authorized voluntary appearance.''

The defendant in his affidavit also contends that the contract between General Motels Company and Jowol Conduit, Inc. (a copy of which is attached to it) does not permit the recovery of more than $14,250 at the most, and that plaintiff's attempt to secure judgment for an additional $47,787.50 and also $25,000 as exemplary damages, was fraudulent and unsupported by any legitimate theory. Affiant further asserts that the complaint does not state facts sufficient to constitute a cause of action against him, because he was only a disclosed agent of the General Motels Company, and that a suit against him personally is contrary to the law and to good conscience. (*Hayman* v. *Shoemake,* 203 Cal.App.2d 140, 159 [21 Cal. Rptr. 519].) Additional contentions relative to the alleged fraudulent schemes and actions of the plaintiff are set forth.

While detailed findings of fact were not made by the court and none were necessary, as the ruling was in response to a motion (*Waller* v. *Weston,* 125 Cal. 201, 204 [57 P. 892]; *Ross* v. *Ross,* 200 Cal.App.2d 229, 231 [19 Cal.Rptr. 71]; *DeLong* v. *Miller,* 133 Cal.App.2d 175, 177-178 [283 P.2d 762]; *Parker* v. *Parker,* 107 Cal.App.2d 215, 217 [236 P.2d 828]; *Waymire* v. *California Trona Co.,* 176 Cal. 395, 399-400 [168 P. 563]; 48 Cal.Jur.2d, Trial, § 282, pp. 285-286), the court made it clear that it acted in favor of the defendant on all of the grounds alleged by him. In a ''Memorandum of Order on Motion to Set Aside Judgment by Default Against Claude M. Henderson,'' the court says: ''This order is based on all grounds including the finding that attorney for defendant Claude M. Henderson was not authorized to enter an appearance individually for said defendant.'' The formal order following the memorandum is general in its terms.

In *Winslow* v. *McCarthy,* 39 Cal.App. 337, 339 [178 P. 720], it is stated: ''The order granting the motion [setting aside a judgment] is general in its terms, and if it can be sustained upon any of the grounds stated in the motion, an appellate court is bound to assume that it was granted upon such ground.''

And in *Nolte* v. *Nolte,* 29 Cal.App. 126, 128 [154 P. 873], on an appeal from an order vacating a final decree from which no appeal had been taken the opinion says: ''. . . it will be assumed that the court had before it facts sufficient to authorize such [vacating] order to the full extent that the order could legally be made under any circumstances.''

While respondent advances numerous reasons why the default judgment should be set aside, and the briefs contain lengthy discussions concerning all of the grounds on which the court based its order, it will not be necessary to lengthen the opinion by a detailed consideration of all of these matters, if, in fact, the contention that the court never had personal jurisdiction of the defendant prior to the entry of his default is supported by substantial evidence. One good ground to set aside the default is sufficient.

An appellate court has no right to retry a case on the facts. Our whole duty as to the factual showing is to determine whether there is substantial evidence to support the conclusion of the trier of fact even though there is contrary evidence equal to, or even greater than, that which favors the trial court's decision. We cannot weigh the evidence, or pass upon the credibility of the witnesses. If we

reach a conclusion that there is substantial evidence to support a judgment or order we must affirm it (*Berniker* v. *Berniker*, 30 Cal.2d 439 [182 P.2d 557]), even though we might have reached a contrary conclusion as individual judges if we had been the triers of fact below. (See *Bonfilio* v. *Ganger*, 60 Cal.App.2d 405 [140 P.2d 861]; *Hammond Lbr. Co.* v. *Bloodgood*, 101 Cal.App. 561 [281 P. 1101].)

As already stated, there was an affidavit of Mr. Henderson covering essential matters which, contrary to the contentions of appellant, was properly considered by the court. (*Beckett* v. *Kaynar Mfg. Co., Inc.*, 49 Cal.2d 695, 698-699 [321 P.2d 749]; *Ware* v. *Stafford*, 206 Cal.App.2d 232 [24 Cal.Rptr. 153]; *Skouland* v. *Skouland*, 201 Cal.App.2d 677 [20 Cal.Rptr. 185]; *Atkins, Kroll & Co.* v. *Broadway Lbr. Co.*, 222 Cal.App.2d 646, 654 [35 Cal.Rptr. 385]; *Mayo* v. *Beber*, 177 Cal.App.2d 544 [2 Cal.Rptr. 405].) In the exercise of its discretion, the court also properly permitted additional evidence by deposition and the personal testimony of witnesses. (*Bagley* v. *Eaton*, 10 Cal. 126, 148; *Perez* v. *Perez*, 111 Cal.App.2d 827 [245 P.2d 344].)

In the affidavit, the respondent alleges under oath that he was not served in the case, and that he never authorized the firm of Dolley, Jessen & Painter to appear for him. This unqualified sworn statement is further supported by the testimony of the defendant in his deposition as follows:

"Q. Was there ever any discussion between you and any member of the firm of Dolly [*sic*], Jessen and Painter—and when I said 'any member of the firm' I meant any attorney who was a partner or an employee of that firm—with reference to someone connected with that firm making an appearance on your behalf in this lawsuit? A. On my behalf?

"Q. Yes. A. Personally, you mean?

"Q. Yes. A. No.

"Q. There was never any discussion like that at any time? A. No, not that I can remember.

"Q. Were you ever requested by any one of them if you would grant authority to the firm for it to appear on your behalf as an individual defendant? A. Not that I can remember, no."

The respondent also testified that he did not know that the Los Angeles firm had filed a demurrer for him personally, except much later when he derived that information from some records which he had seen within three or four weeks

before giving his deposition. He testified that he did not know that the law firm had filed a demand on his behalf for a cost bond, and that he never heard of that fact until the time of the taking of his deposition.

Thus, there was substantial evidence to support the determination of the trial court that Mr. Henderson had never authorized the Los Angeles firm to appear for him, and that the default judgment against him was void. It is true that there was strong contrary evidence. Although no one ever testified positively that he had authorized the Los Angeles firm to appear for him, one of the members of that organization stated that he assumed that such an authorization must have been given in accordance with the usual practice of the firm. It is established that shortly before the time that Dolley, Jessen & Painter served plaintiff with a notice of withdrawal, Mr. Henderson had in fact terminated the services of that firm as attorneys for the General Motels Company and for the defendant personally in other suits in which the Los Angeles firm had represented them, but there is no positive showing that Mr. Henderson knew at that time that an appearance had been filed for him personally in the current suit.

█ It is also true that there is a presumption that when attorneys appear for a defendant they have proper authorization to do so (*Gagnon Co., Inc.* v. *Nevada Desert Inn, Inc.,* 45 Cal.2d 448, 459 [289 P.2d 466]; *Wilson* v. *Sharp,* 175 Cal.App.2d 691, 695 [346 P.2d 910]); this presumption is disputable, and the burden of proof rests upon the person attacking the authority of the attorneys to act. (*Wilson* v. *Barry,* 102 Cal.App.2d 778 [228 P.2d 331].)

The existence of these counter considerations simply shows that there was a conflict of evidence; under the appellate law of this state this court is in no position to determine that the trial court was wrong in its ascertainment of the facts. We, therefore, are constrained to affirm the order. It would be a useless compilation of dicta for us to discuss in turn all of the other grounds advanced by the respondent in support of the court's ruling.

However, it is proper to call attention to the fact that there has now been a general appearance in the case by Mr. Henderson and that the action must hereafter be tried by the court as stated in the order itself and conceded by his attorneys in respondent's brief:

"At this point, mention should be made of the portion of the judgment below which requires Respondent to answer the

complaint. Where there is no service of process and no authorized appearance, there is no jurisdiction over the defendant and the judgment 'is a void judgment or in all events has all the attributes of a void judgment.' *City of Los Angeles* v. *Morgan,* 105 Cal.App.2d 726 [234 P.2d 319] (2d Dist. 1951). Usually, the proper remedy in setting aside such a void judgment is to dismiss the case for lack of jurisdiction. Here, however, Respondent has not asked for a dismissal, but only for 'his day in court.' Therefore, in affirming the decision, this court would not dismiss but would return the case to the lower court allowing respondent 15 days within which to answer.''

The general appearance was made by Mr. Henderson when he filed the present motion, based not only on his contention that there had been no personal appearance by him but also on the subject matter of the complaint and the existence of alleged fraud. (*Security Loan & Trust Co.* v. *Boston etc. Co.,* 126 Cal. 418 [58 P. 941, 59 P. 296] ; *In re Clarke,* 125 Cal. 388 [58 P. 22] ; *Thompson* v. *Alford,* 135 Cal. 52 [66 P. 983] ; *Olcese* v. *Justice's Court,* 156 Cal. 82, 88 [103 P. 317] ; *Shelley* v. *Casa De Oro, Ltd.,* 133 Cal.App. 720, 723 [24 P.2d 900] ; *Roberts* v. *Superior Court,* 30 Cal.App. 714 [159 P. 465] ; *Taylor* v. *Superior Court,* 93 Cal.App. 445, 447-448 [269 P. 727] ; *Josephson* v. *Superior Court,* 219 Cal.App.2d 354, 361 [33 Cal.Rptr. 196] ; *Crabtree* v. *Superior Court,* 197 Cal. App.2d 821, 827-828 [17 Cal.Rptr. 763] ; 5 Cal.Jur.2d, Appearance, § 17, p. 21; § 24, pp. 29-30; 31 A.L.R.2d, 262, 268.)

Upon the going down of the remittitur, the trial judge is directed to afford a reasonable time to the defendant, Claude M. Henderson, within which to answer, or otherwise plead to, the complaint.

The order is affirmed.

Brown (R. M.), J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 23, 1965.