Filed 2/1/16  Trousas v. Kim CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| KIM TROUSAS et al., | D068062 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. SCVSS146291) |
| SOO M. KIM et al., | |
| Defendants and Appellants. | |


APPEAL from orders of the Superior Court of San Bernardino County, Bryan F. Foster, Judge.  Affirmed in part and reversed in part with directions.


Best Best & Krieger and Kira L. Klatchko for Defendant and Appellant Soo M. Kim.

Law Office of Chad Biggins and Chad Biggins for Defendant and Appellant Samuel Kim.

Pedersen McQueen, Neil Pedersen, Teresa A. McQueen and Armond M. Jackson for Plaintiffs and Respondents.

In this case, we affirm in part the trial court's orders denying defendants and respondents Soo Kim's and Samuel Kim's (hereinafter sometimes referred to by their first names or collectively as the Kims) respective motions to be relieved from default judgments entered against them. Both of the Kims appeared in the trial court and then failed respectively to respond to discovery requests and a first amended complaint (FAC) filed by plaintiffs and respondents Kim Trousas, Brandi Lynn Stiff, and Rebecca Meta Frederick (collectively plaintiffs). The FAC alleged claims for wrongful termination and emotional distress; plaintiffs took the Kims' defaults, proved up their damages, and the trial court entered default judgments in the amount of $2 million against each of them, including $750,000 in punitive damages. Three years after entry of the default judgments, the Kims moved for relief from the defaults and argued their counsel did not have authority to represent them.

In denying the Kims' motions for relief from the default judgments, the trial court found that as a matter of fact they were both properly served with the FAC and plaintiffs' statement of damages. With respect to Soo Kim, the trial court found that her statements to the effect that her two prior attorneys had somehow concealed from her the status of the litigation were not credible. In denying Samuel Kim's motion, the trial court implicitly made a similar finding.

We affirm in part. The record supports the trial court's conclusions the Kims authorized the respective attorneys to act on their behalf and were properly served with the FAC and the statement of damages. However, plaintiffs presented no evidence with

2

respect to the financial condition of either defendant. Accordingly, the awards of punitive damages must be vacated.

FACTUAL AND PROCEDURAL BACKGROUND

A. 2007

In 2006, plaintiffs were all employees at a restaurant known as Kay's Café, located in Highland, California. In January 2007, they filed a complaint against the alleged owners of Kay's Café: Soo Kim, Conway Kim (hereinafter sometimes Conway), KCS Enterprises, LLC (KCS) and Alan Holub. Plaintiffs alleged that for a number of years they had been the victims of various forms of sexual harassment, including name calling, lewd comments, and unwanted and unwelcome touching and grabbing. They further alleged that this conduct gave rise to claims under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) as well as claims for wrongful termination, wage and hour violations of the Labor Code, battery, intentional infliction of emotional distress and negligence.

In February 2007, Soo Kim was served with the original complaint by way of substituted service on an employee at the restaurant. According to the declaration of plaintiffs' process server, he made three attempts to serve the complaint personally on Soo at the restaurant before leaving the complaint with a waitress. In April 2007, plaintiffs attempted to personally serve a statement of damages on Soo at the restaurant; after a number of attempts, plaintiffs' process server left the statement of damages with another employee of the restaurant. Soo appeared by way of an answer to the initial

3

complaint, filed by her first attorney, Chanhoo Joo (Joo).  Joo also answered on behalf of Conway Kim and KCS.  In addition, Joo served responses to plaintiffs' discovery requests, which included a verification signed by Soo.

B.  2008

In January 2008, plaintiffs took Conway Kim's deposition as the person most qualified to answer on behalf of defendant KCS.  Conway explained Soo Kim was his "friend," but not his wife; he further explained that he and his brothers, Samuel Kim and Kent Kim were the owners of KCS, which was the actual owner of Kay's Café.  Conway further explained that he used Soo's name on various business documents related to Kay's Café because he had poor credit.  Shortly after Conway's deposition was taken, plaintiffs discovered that ownership of Kay's Café had recently been transferred to a new entity, 3-CSK, Inc. (3-CSK), which had the same agent for service of process as KCS, to wit: Samuel Kim.

In response to Conway Kim's deposition testimony and the transfer to 3-CSK, plaintiffs prepared the FAC, which added Samuel Kim, Kent Kim and 3-CSK as defendants.  Although Joo served a motion to withdraw as counsel in February 2008, two days before the motion to withdraw was heard, on April 7, 2008, plaintiffs served Joo with the FAC.  Thereafter, Joo's motion to withdraw was granted.

On May 28, 2008, plaintiffs were served with a substitution of attorney signed by Soo Kim and Vince Shulman (Shulman), Soo's second attorney.  Shulman advised plaintiff's counsel he was authorized to accept service of process on behalf of Soo Kim.

4

In 2008, Shulman also appeared at case management conferences on behalf of Soo, or employed cocounsel to do so, and filed a case management statement that indicated he was going to file a demurrer on his clients' behalf.

Shulman also advised plaintiffs' counsel that he represented Samuel Kim and was authorized to accept service on behalf of Samuel. Plaintiffs served the FAC on Samuel by way of service on Shulman, who duly acknowledged service on Samuel. Shulman also arranged for local counsel to appear on behalf of Samuel at case management conferences. No answer to the FAC was ever filed on behalf of Samuel.

In December 2008, a statement of damages was served on Samuel Kim by way of service on Shulman.

C. 2009

Because Soo Kim had failed to provide responses to plaintiffs' discovery requests, in January 2009, plaintiffs moved for an order imposing terminating sanctions. In February 2009, the trial court granted plaintiffs' motion, struck Soo's answer and entered her default.

Because no answer was ever filed on behalf of Samuel Kim, plaintiffs took Samuel's default on May 29, 2009.

D. 2010

On March 18, 2010, the trial court conducted a prove-up hearing and awarded plaintiffs $2 million in damages against each defendant, including $750,000 in punitive damages. Judgments against Soo Kim and Samuel Kim in that amount were then

5

entered.

E.  2013

In 2013, plaintiffs served levies of execution on depository institutions where Soo Kim and Samuel Kim had accounts.  Soo and Samuel then obtained a preliminary injunction preventing plaintiffs from making further attempts to execute on the judgment and moved to set aside their respective defaults and default judgments.

1.  *Soo Kim's Motion*

In a declaration she filed in support of her motion for relief from the default and default judgment, Soo stated she was not an employee of Kay's Café, did not manage it, did not authorize either Joo or Shulman to appear on her behalf and that her signature on the discovery verification and substitution of attorneys had been forged.  In response, plaintiffs submitted the declaration of a document examiner who concluded that the signature on a fictitious business name statement filed for Kay's Café in 2006, and the signature on the declaration Soo submitted in support of her application for the preliminary injunction, both of which Soo conceded were hers, were made by the same person who signed the substitution of attorney and verification of discovery responses.

In reply, Soo submitted the declaration of her own expert, who criticized plaintiffs' expert's conclusion and analysis.  However, as the trial court noted, Soo's expert did not conclude that the signatures on the verification and substitution were forgeries.

2.  *Samuel Kim's Motion*

In support of his motion for relief from default, Samuel argued that the record did

6

not show that he had ever been properly served with a statement of damages; Samuel's motion, in the first instance, simply argued that, although the court's records showed that the statement of damages had been mailed to Shulman, proof of the mailing to Shulman was insufficient to show that the statement of damages had been properly served. Initially, Samuel's motion was not supported by any declaration he made. Instead, it relied solely on counsel's declaration that the record did not show that Samuel had ever been personally served with a statement of damages. At the outset, Samuel made no statements with respect to when he learned about the lawsuit or his relationship with Shulman.

In response to Samuel's contention that service of the statement of damages on Shulman was ineffective, plaintiffs produced documentation which showed that Shulman had advised plaintiffs' counsel that he represented Samuel and that he agreed to accept service of the FAC on his behalf. Plaintiffs also relied on minutes from the trial court which reflected that Shulman had arranged for counsel to appear at case management conferences on behalf of Samuel, among others, before the statement of damages was mailed to Shulman.

The proof that Shulman agreed to accept service on behalf of Samuel Kim caused Samuel to substantially alter and expand the theory upon which he sought relief from the default and default judgment. In his reply brief, Samuel submitted a declaration in which he stated that he had no knowledge of the lawsuit until plaintiffs' executed on the judgment and that he had not retained Shulman to represent him or authorized him to

7

accept service on his behalf. Counsel further argued that there was no proof in the record that Shulman had ever made an appearance in the action on Samuel's behalf; accordingly, counsel argued that plaintiffs were not entitled to the benefit of Code of Civil Procedure section 425.11, subdivision (d)(2), which would permit service of the statement of damages on Shulman.

As we indicated the outset, the trial court denied the respective motions for relief from the respective default judgments.

## DISCUSSION

## I.

## SUE KIM'S APPEAL

A. Jurisdiction

On appeal, Soo contends she was never properly served with the complaint, the statement of damages, or the FAC, and that neither Joo nor Shulman was ever authorized to later appear on her behalf. She contends that she established her signatures on discovery documents and the substitution of attorney were forged. Thus, she contends that the trial court never had personal jurisdiction over her and that it should not have entered her default and later a default judgment.

1. *Standard of Review*

In considering Soo's factual contentions, we are of course constrained by our role as a court of review and bound to accept the trial court's contrary factual findings, notwithstanding that they were based entirely on a documentary record, if those findings

8

are supported by the record.  (See *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479.)

2. *Principles of Law*

Soo's appeal is principally governed by two well-established principles of civil procedure: (1) when an attorney appears for a defendant, we may presume the attorney was authorized to do so; and (2) when a party appears in an action, the party waives any defects in service of process.

The law is fairly clear that when an attorney appears in a lawsuit, his appearance is presumptively authorized.  (*Gagnon v. Nevada Desert Inn, Inc.* (1955) 45 Cal.2d 448, 459; *Kallman v. Henderson* (1965) 234 Cal.App.2d 91, 98; *Wilson v. Sharp* (1959) 175 Cal.App.2d 691, 695.)  However, that presumption is "disputable, and the burden of proof rests upon the person attacking the authority of the attorneys to act."  (*Kallman v. Henderson*, *supra*, at p. 98.)

With respect to the consequence of a party's appearance in an action, the law is equally clear.  In *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, service on the defendants was defective; nonetheless, the defendants appeared in the action and filed answers.  In holding that, in light of their appearance in the action the defendants could not assert the defects in service, the court stated:  "The rule that a general appearance 'waives' objections to defective service is actually a matter of forfeiture, not waiver.  Service of summons is required in order to give the defendant notice of the action, as due process demands.  [Citation.]  But once the defendant appears in the action, this purpose has been served.  'A defendant has a right to demand that

9

process be issued against him in the manner provided by law, but if process is not so issued and he appears generally without making objection, such appearance, being the purpose of the process, confers jurisdiction of the person and the court is empowered to act in the premises.' [Citation.] [¶] . . . [¶] Any rule that a general appearance does not waive objections to service unless the waiver is knowing and intelligent would exalt form over substance. A defendant who has actual knowledge of the action and who has submitted to the authority of the court should not be able to assert a violation of rules which exist only to bring about such knowledge and submission. We therefore hold that a defendant who makes a general appearance forfeits any objection to defective service, even when the defendant does not know at the time that such an objection is available." (*Id.* at pp. 1147-1148, fn. omitted.)

3. *Analysis*

The trial court determined Joo and Shulman were authorized to appear on Soo's behalf. In reaching this conclusion, the trial court relied on the fact Soo signed the discovery verification and substitution of Shulman as counsel; in doing so, the trial court expressly rejected Soo's contention her signatures were forged. This factual finding by the trial court—that Soo signed the verification and substitution—is material to the trial court's finding that she authorized the appearance of counsel, and ultimately to its finding of personal jurisdiction over her.

There is ample evidence which supports the trial court's conclusion that Soo signed the pertinent litigation documents. Soo's overall credibility was diminished by the

10

fact that, although she denied having any control over or knowledge with respect to the operation of Kay's Café, she signed a 2006 fictitious business name statement which stated that she would be doing business as Kay's Café and listed the restaurant's Highland address as her place of business. Her credibility was diminished further by the deposition testimony of her friend, codefendant Conway Kim, who conceded under oath that she was the record owner of the restaurant. Her credibility was of course also damaged by the fact that, in order to adopt Soo's version of events, the trial court would have to accept the somewhat implausible notion that not one but two members of the bar engaged in separate consecutive acts of forgery and fraud in order to appear on her behalf. As the trial court stated: "I have to suspend belief in order to buy her statement."

More particularly, the trial court's finding that no forgery occurred was supported by the conclusion of the expert retained by plaintiffs, who determined the signatures that appeared on the verification and substitution were Soo's. Although, as we noted, Soo's expert criticized plaintiffs' expert's qualifications and methodology, he did not offer a contrary opinion. Given the entire record, and in particular Soo's lack of credibility, the trial court did not act unreasonably in accepting plaintiffs' expert's conclusion that Soo signed the disputed documents.

In short, the record fully supports the trial court's conclusions that Soo signed the litigation documents and that her signatures in turn were convincing evidence Joo and Shulman were authorized to appear on her behalf. The authorized appearance of counsel on Soo's behalf of course in turn dispenses with her jurisdictional contentions.

11

(*Fireman's Fund Ins. Co. v. Sparks Construction, Inc.*, *supra*, 114 Cal.App.4th at pp. 1147-1148.)

B. Service of Statement of Damages

In any wrongful death or personal injury action, Code of Civil Procedure section 425.11, subdivision (c) requires that a statement of damages be served on a defendant before any default may be taken. If the defendant has not yet appeared, the statement of damages must be served in the same manner as a summons. (Code Civ. Proc., § 425.11, subd. (d).) In the trial court, Soo's counsel agreed that a statement of damages may be served by way of substituted service.

Although Soo's declaration states that she never received the statement of damages delivered to one of the employees at Kay's Café, as is the case with respect to service of the summons, the record strongly indicates that she in fact received both the summons and the statement of damages and that the summons and statement were eventually passed along to her attorneys. The inference that she had actual notice of both documents arises from the fact that she obtained counsel to defend her in the action and her overall lack of credibility. In light of this record, the trial court could conclude that substituted service of the statement of damages gave Soo actual notice of it and that the trial court could thereafter take her default.

In this regard, where substituted service has been employed and has provided actual notice, the principle that we liberally interpret the service of process statutes in favor of service applies and permitted substituted service under Code of Civil Procedure

12

section 415.20, subdivision (b) at the place of business Soo identified in the fictitious business name statement she executed. (See *Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 778; see also *Bein v. Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387.) This is not an instance where no service contemplated under the statutes was used but the defendant nonetheless had actual notice of the litigation. (See, e.g., *American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 389; *Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 413.) We recognize that in such instances actual notice will not effect service.

C. Punitive Damages

The default judgment entered against Soo included $750,000 in punitive damages. As Soo points out, no evidence as to her income or net wealth was or could be presented at the prove-up hearing.

The necessity of such evidence in support of an award of punitive damages is well established and of constitutional dimension. (See *Adams v. Murakami* (1991) 54 Cal.3d 105, 111-112.) In *Adams*, the Supreme Court stated that "an award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition" (*id.* at p. 109), because "[w]ithout such evidence, a reviewing court can only speculate as to whether the award is appropriate or excessive" (*id*. at p. 112). "Even if an award is entirely reasonable in light of the other two factors . . . , the award can be so disproportionate to the defendant's ability to pay that the award is excessive *for that reason alone*." (*Id*. at p. 111.)

13

Importantly, an appellate court may review the alleged excessiveness of a damages award in an appeal from a default judgment. (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 824; *Scognamillo v. Herrick* (2003) 106 Cal.App.4th 1139, 1150.) A damage award not supported by substantial evidence is excessive and thus subject to our review, not withstanding that it was made in a default proceeding and is embodied in a default judgment. (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1746.) Accordingly, the validity of the punitive damage award is properly before us and, because there is no evidence of Soo's financial condition in the record, we must reverse the portion of the judgment against her that awards plaintiffs punitive damages.

## II.

## SAMUEL KIM'S APPEAL

A. Shulman's Authority

As he did in the trial court, Samuel once again argues that Shulman had no authority to represent him. The record wholly refutes his contention.

As was the case with respect to Soo, based on Shulman's appearance on behalf of Samuel at the case management conferences, the trial court was permitted to presume that Shulman was authorized to do so. (*Kallman v. Henderson*, *supra*, 234 Cal.App.2d at p. 98.) That presumption was of course rebuttable. (*Ibid*.) However, in attempting to rebut the presumption, Samuel relied solely on his own declaration stating that he did not authorize Shulman to act on his behalf and had no knowledge of the action until plaintiffs

14

attempted to execute on his bank accounts. He offered no evidence from Shulman or any evidence that he attempted to obtain evidence from Shulman. On this record, this showing was entirely inadequate to overcome the presumption of authority.

As we have noted, in initially challenging the default judgment Samuel relied solely on the narrow and entirely technical argument that service of the statement of damages on Shulman by mail was ineffective because Shulman had not appeared in the action on behalf of Samuel. (See Code Civ. Proc., § 425.11, subd. (d)(1) & (2).) This initial argument was not supported any declaration from Samuel or any assertion with respect to Shulman's authority to represent him. Only when, in opposition to Samuel's motion, plaintiffs produced evidence both that Shulman represented he had authority to accept service of the FAC and thereafter appeared at case management conferences on Samuel's behalf, did Samuel attack Shulman's authority to act on his behalf and argue that therefore the acknowledgement of service of process signed by Shulman did not give the trial court jurisdiction over him and that service of the statement of damages on Shulman was invalid. Samuel's belated presentation of the broader equitable argument that he had been the victim of fraud by Shulman suggests recent invention and plainly undermines Samuel's credibility.

Samuel's statement that he had no knowledge of the action until plaintiffs executed on their judgment also lacks credibility. The record shows that Samuel was an owner of KCS and that his brother, Conway Kim, was another owner of KCS. The record also suggests that Samuel was the agent for service of process for both KCS and 3-CKS, the

15

transferee of KCS's interest in Kay's Café. The transfer to 3-CKS, which occurred after the lawsuit commenced, of course suggests an effort to avoid payment of any judgment. Given these circumstances, in order to accept Samuel's assertion that he was entirely ignorant of plaintiffs' complaint, one would have to believe that although Conway and his friend Soo were defending the litigation in which Samuel's interest in KCS was plainly placed in peril and arranging for the transfer to 3-CKS, they both nonetheless kept Samuel in the dark about the litigation. The trial court plainly was not required to indulge such a dubious narrative.

In sum, the record shows that Shulman was presumptively authorized to appear on Samuel's behalf and that Samuel's belated, self-serving and uncorroborated declaration failed to overcome that presumption. Thus, the FAC and statement of damages were properly served on Shulman before Samuel's default was entered, and the trial court did not err in denying Samuel's motion for relief from the default judgment.[1]

B. Punitive Damages

As was the case with respect to Soo, no evidence of Samuel's financial condition was offered at the prove-up hearing, and, accordingly, the trial court erred in awarding $750,000 in punitive damages against him. As we indicated with respect to Soo, in

---

[1]     Parenthetically, we reject Samuel's alternative contention that Shulman's conduct amounted to the abandonment that permits relief from default under the court's power to remedy extrinsic fraud. (See *Orange Empire Nat'l Bank v. Kirk* (1968) 259 Cal.App.2d 347, 353-356.) Having asserted that he did not know about the litigation and never retained Shulman, Samuel never presented any evidence that he relied on Shulman to represent him and that Shulman thereafter, and for no valid reason, failed to protect his interests. In the absence of such evidence, the trial court could only speculate as to whether the failure to defend the action was the fault of Samuel or Shulman.

attacking the default judgment Samuel may challenge such an award of punitive damages as excessive. (See *Steven M. Garber & Associates v. 2.5Eskandarian*, *supra*, 150 Cal.App.4th at p. 824; *Scognamillo v. Herrick*, *supra*, 106 Cal.App.4th at p. 1150.)

## DISPOSITION

The orders denying Soo Kim's and Samuel Kim's motions for relief from the default judgments are reversed insofar as the orders leave undisturbed the respective awards of punitive damages. On remand, the trial court is directed to vacate the awards of punitive damages and permit plaintiffs to seek awards of punitive damages that meet the requirements of the law and due process and, in particular, present evidence with respect to the financial condition of Soo Kim and Samuel Kim. In all other respects, the orders are affirmed.[2]

Plaintiffs to recover their costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

HALLER, J.

IRION, J.

---

[2] Soo has asked that we take judicial notice of documents related to Shulman's 2014 summary disbarment. Neither the documents nor the circumstances set forth in them were before the trial court when it ruled on Soo's motion for relief from the default judgment. Her request for judicial notice is therefore denied. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184.)

17