[Civ. No. 66148. Second Dist., Div. One. Aug. 24, 1983.]

EVANGELIZE CHINA FELLOWSHIP, INC., Plaintiff and Appellant, v. EVANGELIZE CHINA FELLOWSHIP, HONG KONG et al., Defendants and Respondents.

COUNSEL

Tuttle & Taylor, Merrick J. Bobb and Henry T. Greely for Plaintiff and Appellant.

Jerry M. Hill, Gary L. Bostwick and Barash & Hill for Defendants and Respondents.

OPINION

**HANSON (Thaxton), J.**—Plaintiff Evangelize China Fellowship, Inc. (hereinafter ECF, Inc.) appeals from the trial court's minute order quashing service of summons for lack of personal jurisdiction, an order which we affirm.

### FACTUAL BACKGROUND

ECF, Inc. and Evangelize China Fellowship, Hong Kong (hereinafter ECF, Hong Kong) are independent entities both of which were founded by Reverend Andrew Gih for the purpose of promoting "christianity among persons of chinese descent."

A battle for power developed between these two organizations and Reverend Gih was replaced by plaintiff Edwin Orr as the head of ECF, Inc. Orr is not a party to this appeal.

ECF, Hong Kong, publishes The Life Magazine through its printing office entitled Sheng Tao Press (hereinafter Press). It is conceded by the parties that 600 out of 8,500 copies of The Life Magazine are sent to California readers each month. The majority of the issues are distributed to readers in China and Taiwan.

PROCEDURAL HISTORY

On or about March 19, 1981, plaintiff ECF, Inc. and Orr filed a complaint against ECF, Hong Kong, Press, Jonathan Lee, Calvin Lee, Y. Y. Lee, Philips Lee, Y. H. Lee, C. N. Lee and various Does praying for damages, declaratory relief, injunctive relief, imposition of a constructive trust and an accounting of funds allegedly wrongfully received.

The first three causes of action revolve around defendants' conduct allegedly misleading to contributors of donations. Such conduct consists of the sending of receipts to donors that bear the name and Los Angeles address of ECF, Inc. along with Press' name and Hong Kong address, and a false statement that "gifts are deductible for tax purposes."

The fourth cause of action alleged that an editorial appearing in the July 1980 issue of The Life Magazine was libelous of plaintiff ECF, Inc. and Orr.

The complaint was verified by the plaintiff's attorney pursuant to Code of Civil Procedure section 446.[1]

On November 25, 1981, all of the defendants except for Jonathan Lee and Philip Lee (who are not parties to this appeal) filed a motion to quash service of summons for lack of personal jurisdiction or, alternatively, to dismiss the action on the ground of forum non conveniens. Argument on the motion was heard on January 19, 1982. The trial court granted defendants' motion to quash service of summons for lack of personal jurisdiction and entered its minute order on January 25, 1982.

ISSUE

 The sole issue on appeal is whether the trial court erred in holding that California did not have personal jurisdiction over the respondents.

---

[1]Code of Civil Procedure section 446 states, in pertinent part, "When the verification is made by the attorney for the reason that the parties are absent from the county where he or she has his or her office, . . . the attorney's or officer's affidavit shall state that he or she has read the pleading and that he or she is informed and believes the matters therein to be true and on that ground alleges that the matters stated therein are true. However, in those cases the pleadings shall not otherwise be considered as an affidavit or declaration establishing the facts therein alleged."

ECF, Inc. has filed a motion with this court for consideration on appeal of two additional documents. The first document is a verification of the complaint by an officer of ECF, Inc. The second document is a translation by a court-certified translator of portions of the allegedly libelous editorial. This court denies said motion.

## DISCUSSION

The applicable standard of review was set forth in *Arnesen v. Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 994-995 [107 Cal.Rptr. 744], wherein it is stated: "We test [the] record in light of the principles that: (1) where a defendant properly moves to quash out of state service of process for lack of jurisdiction, the burden of proof is upon the plaintiff to establish the facts of jurisdiction by a preponderance of the evidence (*Wilson v. Eddy*, 2 Cal.App.3d 613, 617 [82 Cal.Rptr. 826]; *Martin Bros. Elec. Co. v. Superior Court*, 121 Cal.App.2d 790, 794 [264 P.2d 183]; *Briggs v. Superior Court*, 81 Cal.App.2d 240, 251 [183 P.2d 758]); (2) evidence of those facts or their absence may be in the form of declarations with the verified complaint being treated as a declaration for that purpose (*Atkins, Kroll & Co. v. Broadway Lbr. Co.*, 222 Cal.App.2d 646, 654 [35 Cal.Rptr. 385, 12 A.L.R.3d 880]);[2] (3) where there is a conflict in the declarations, resolution of the conflict by the trial court will not be disturbed on appeal if the determination of that court is supported by substantial evidence (*Vibration Isolation Products, Inc. v. American Nat. Rubber Co.*, 23 Cal.App.3d 480, 482 [100 Cal.Rptr. 269]; *Atkins, Kroll & Co. v. Broadway Lbr. Co., supra*, 222 Cal.App.2d 646, 654); and (4) we are not permitted on appeal to consider evidence not before the trial court (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 218, 219)."

In the case at bench, the defendants' motion to quash service of summons was supported by the following declarations: David Foltz, chairman of ECF, Hong Kong, stating that the only contact between ECF, Hong Kong or its publication department (Press) and California are the 600 out of 8,500 monthly issues of The Life Magazine and the receipts sent to California contributors of funds; Y. H. Lee, a citizen of Hong Kong and a director of ECF, Hong Kong, stating that his/her only contact with California was in 1979 when (s)he was "in transit"; Calvin Lee, a resident of Hong Kong and a director of both ECF, Hong Kong and Press, stating that his only contact with California was while on a vacation in 1976; and C. N. Lee, a citizen of Hong Kong and a director of Press, stating that his/her only contacts with California were in 1971 while visiting relatives, and 1975 while attending a funeral.

Plaintiff's memorandum of points and authorities in opposition to defendants' motion to quash was supported by a copy of a page from a 1979 issue of The Life Magazine and an English translation thereof stating ECF,

---

[2]As noted above, Code of Civil Procedure section 446 prohibits the complaint in the case at bench from being treated as a declaration.

Hong Kong's intent to establish an office in North America to be administered by Jonathan Lee who was already present in Los Angeles.[3] ■ The Supreme Court recently set forth a concise statement of the constitutional requirements before a court can exercise jurisdiction over nonresidents in *Secrest Machine Corp. v. Superior Court* (1983) 33 Cal.3d 664, 668-669 [190 Cal.Rptr. 175, 660 P.2d 399], wherein the court stated: "A California court may exercise jurisdiction over nonresidents on any basis not inconsistent with the United States or California Constitutions. (Code Civ. Proc., § 410.10.) The parameters of the states' constitutional powers to compel absent defendants to defend suits brought in state courts has been defined in a series of United States Supreme Court decisions of which *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057] is the seminal case. Generally, the rule is that the forum state may exercise jurisdiction over a nonresident defendant only where the defendant has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' (*Internat. Shoe Co., supra,* 326 U.S. at p. 316 [90 L.Ed. at p. 102].) 'In determining whether a particular exercise of state-court jurisdiction is consistent with due process, the inquiry must focus on "the relationship among the defendant, the forum and the litigation." *Shaffer* v. *Heitner* [(1977) 433 U.S. 186 (53 L.Ed.2d 683, 97 S.Ct. 2569)] at 204.' (*Rush* v. *Savchuk* (1980) 444 U.S. 320, 327 [62 L.Ed.2d 516, 524, 100 S.Ct. 571].)

"The high court has said that 'the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.' (*Internat. Shoe Co., supra,* 326 U.S. at p. 319 [90 L.Ed.2d at pp. 103-104].) Thus, where a corporation's activities have been extensive or wide ranging, or substantial, continuous and systematic, they justify jurisdiction for all causes of action asserted against the corporation. (See, *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264]; *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57]; *Perkins* v. *Benguet Mining Co.* (1952) 342 U.S. 437, 447-448 [96 L.Ed. 485, 493-494, 72 S.Ct. 413].)

---

[3]While defendants' objection to this evidence was properly sustained pursuant to Evidence Code section 753, a translation by a court-certified interpreter was subsequently admitted into evidence.

"Less extensive activity may support jurisdiction for purposes of a particular cause of action depending upon the nature and quality of the acts, the degree of relation to the asserted cause of action, and the balance between the convenience of the parties and the interest of the state in asserting jurisdiction. (*Cornelison* v. *Chaney, supra,* 16 Cal.3d at p. 143, 148; *Hess* v. *Pawloski* (1927) 274 U.S. 352 [71 L.Ed. 1091, 47 S.Ct. 632]; *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 223 [2 L.Ed.2d 226, 78 S.Ct. 199]; *Hanson* v. *Denckla* (1958) 357 U.S. 235, 250-253 [2 L.Ed.2d 1283, 1295-1297, 78 S.Ct. 1228].) California has recognized that a state may exercise jurisdiction over one who causes effects in the state by an act or omission done elsewhere with respect to causes of action arising. from the effects. This is so unless the nature of the effects and of the individual's relationship to the state make exercise of jurisdiction unreasonable. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 443 [128 Cal.Rptr. 34, 546 P.2d 322]; *Quattrone* v. *Superior Ct.* (1975) 44 Cal.App.3d 296 [118 Cal.Rptr. 548]; see, Judicial Council com. to Code Civ. Proc., § 410.10, 14 West's Ann. Cal. Code; Rest.2d Conf. of Laws, § 37.)

"In cases where jurisdiction is based on the defendant's occasional activities the United States Supreme Court has said that '. . . it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' (*Hanson* v. *Denckla, supra,* 357 U.S. at p. 253 [2 L.Ed.2d at p. 1298].)"

▆▆▆ ECF, Inc. argues that this case falls within the holding of *McGuire* v. *Brightman* (1978) 79 Cal.App.3d 776 [145 Cal.Rptr. 256]. In *McGuire,* the plaintiff, after obtaining a default libel judgment in South Dakota against a California reporter and a California publisher, sought enforcement of the judgment in California. The story which was the basis of the libel action concerned the operations of a hospital on an Indian reservation in South Dakota. The plaintiff was a doctor and a general medical officer at that hospital. Only 4.3 percent of the newspaper's subscribers lived in South Dakota. The California court, relying on the fact that the story was based on information gathered in South Dakota, concerned a South Dakota resident, and was "of greater interest to residents of the forum state than to those elsewhere," held that the South Dakota court properly exercised jurisdiction. (*Id.,* at p. 788.)

The respondents argue that the case at bench is controlled by *Sipple* v. *Des Moines Register & Tribune Co.* (1978) 82 Cal.App.3d 143 [147 Cal.Rptr. 59] and *Church of Scientology of California* v. *Adams* (9th Cir. 1978) 584 F.2d 893.

In *Sipple,* the plaintiff became the focus of the news media when he prevented an attempt to assassinate the President of the United States. Shortly thereafter news articles appeared concerning the plaintiff's homosexuality. Plaintiff brought an invasion of privacy action against various non-resident publishers. None of the publishers had a circulation in California greater than 0.3 percent. The court, at pages 151-152, stated: "All of the newspapers involved here are published in distant states, and none has significant circulation or other contacts with California. None sent reporters into this state to develop the story giving rise to the suit or published the article with the intention that it would be transmitted to California newspapers. The story was one of national importance, not expected to receive any greater attention in California. And it was published not in national magazines, but in local newspapers from other jurisdictions. Thus, here there was little more than publication of an article which would conceivably have a tortious effect in California. No case has authorized jurisdiction on so little. . . . [¶] [W]here, as here, a local newspaper from a distant state has incidental distribution in California, the generation of income from the forum state is 'so fortuitous or unforeseeable as to negative the existence of an intent . . . to bring about' that result, and no jurisdiction attaches."

In *Adams,* a series of articles were published in a St. Louis, Missouri newspaper concerning the Church of Scientology. The Church of Scientology of California brought a libel action in California. No information was gathered in California and the California branch of the Scientology Church was not referred to in the articles. Only .04 percent of the newspaper's total circulation was distributed in California. The court, at pages 897-899 of 584 F.2d, stated: "In a libel case, however, we do not think the likelihood that an offending publication will enter a forum is a fair measure of the reasonableness of the exercise of jurisdiction over a publisher. The nature of the press is such that copies of most major newspapers will be located throughout the world, and we do not think it consistent with fairness to subject publishers to personal jurisdiction solely because an insignificant number of copies of their newspapers were circulated in the forum state. In a defamation case, therefore, the appropriate jurisdictional analysis should be to determine whether or not it was foreseeable that a risk of injury by defamation would arise in the forum state. Certain of our other tort cases which do not involve product liability or conduct causing personal injury are consistent with this approach. *Taylor* v. *Portland Paramount Corp.* 383 F.2d 634, 640-644 (9th Cir. 1966); *Amba Marketing Systems, Inc.* v. *Jobar International, Inc.* 551 F.2d 784 (9th Cir. 1977).

"While it was reasonably foreseeable that the allegedly libelous articles would find their way to California, we think it was not reasonably foresee-

able that any substantial risk of defamation would arise from their circulation in that state, even assuming the articles to be untrue and maliciously published. Although Pulitzer did mail the *Post-Dispatch* to regular subscribers and delivered it to some independent distributors, based on its knowledge that no more than 150 copies of the articles would find their way to California it had little reason to expect a risk of injury from defamation in that state. Under some circumstances a publisher could be held to a duty to anticipate injury to reputation from distribution of a small number of copies. . . .

"' . . . . . . . . . . . . . . . . . . . . . . . .

"In the present appeal, California events were not the topic of the allegedly actionable writings, nor were California readers a principal or secondary target of the articles. No research was done in California and the articles were not written in that state. The only mention of a California resident was by way of reference to a person who spoke as a representative of the national Scientology organization. The California church is a separate corporation, and it was not mentioned in any of the articles. The appellant is included in the discussion only to the extent that one article makes reference to 'about 300 branches' of the Scientology movement in the context of discussing the St. Louis Scientology office, and to the extent that the articles concern Scientology in general.

"' . . . . . . . . . . . . . . . . . . . . . . . .

"' . . . The few copies of the articles circulated in California, when considered in relation to the diffuse, nonspecific direction of the writings as to this California plaintiff, suggest that the publisher's relationship to the California forum with respect to this cause of action is too attenuated to support an assertion of jurisdiction over the person.

"Under the circumstances, the impact in California of publication which appellees could have foreseen was not such as to put them on notice of a risk of injury. Sustaining personal jurisdiction on so tenuous a basis would be inconsistent with the notions of fairness embodied in the concept of due process."

In the case at bench, the trial court was made aware of these cases. Furthermore, the trial court was presented with contradictory allegations of fact. The plaintiff alleges that ECF, Hong Kong sent Jonathan Lee to California to gather information which was the basis of the allegedly libelous article. In their declaration in support of the motion to quash, ECF, Hong

Kong claimed no information was gathered in California. The only contacts with California that were not the subject of disagreement are the 600 out of 8,500 copies per month of The Life Magazine and the receipts that were sent to contributors of funds. The trial court was entitled to accept the respondents' declarations as true. (*Arnesen, supra,* 31 Cal.App.3d 991 at p. 996.)

Since resolution of the conflicts in the declarations are supported by substantial evidence, the trial court's determination will not be disturbed on appeal.

### DISPOSITION

The trial court's order granting respondents' motion to quash service of process for lack of jurisdiction is affirmed.

Spencer, P. J., and Lillie, J., concurred.