[No. A055384. First Dist., Div. Four. May 28, 1992.]

STEPHEN DUNNE, Plaintiff and Appellant, v.
STATE OF FLORIDA et al., Defendants and Respondents.

## COUNSEL

Hackett & Dunne and Robert L. Hackett for Plaintiff and Appellant.

Robert A. Butterworth, Attorney General (Florida), and Jason Vail, Assistant Attorney General, for Defendants and Respondents.

## OPINION

**POCHÉ, Acting P. J.**—The issue presented is whether California will assert jurisdiction over the State of Florida and adjudicate an attorney-client fee dispute arising out of litigation conducted on behalf of Florida in California by a California attorney who was sought out and hired by Florida for the sole purpose of representing Florida in that litigation. We hold that California may properly exert jurisdiction.

### BACKGROUND[1]

In the 1970's the State of Florida was one of several states which had initiated massive antitrust actions against the petroleum industry. These actions were eventually consolidated and assigned for trial to the United States District Court for the Central District of California; Florida agreed to its action being included in this transfer.[2] (See *In re Petro. Products Antitrust Litigation* (J.P.M.D.L. 1976) 419 F.Supp. 712, 713-715 [text & fn. 2].) Florida then decided to engage local counsel to represent its interests, and selected Stephen Dunne for this purpose. In July of 1979 Dunne and the Florida Department of Legal Affairs (acting through the then Attorney General of Florida) executed a "Contract for Counsel" whereby Dunne was retained as a "Special Assistant Attorney General . . . responsible . . . for the handling of the subject litigation." Included within the contract was a detailed provision regarding Dunne's compensation.[3]

"The State of Florida ultimately reached settlements with some of the oil-company defendants, thereby creating a common fund for the benefit of

---

[1]The following narrative is derived from the record including the verified complaint, which we treat as a declaration in opposition to the motion to quash. (See *Evangelize China Fellowship, Inc.* v. *Evangelize China Fellowship* (1983) 146 Cal.App.3d 440, 444 [194 Cal.Rptr. 240].) The ensuing recitals have also been phrased to comport with the usual principles of appellate review. (See *Khan* v. *Superior Court* (1988) 204 Cal.App.3d 1168, 1170-1171, fn. 1 [251 Cal.Rptr. 815].)

[2]Florida's action, originally filed in the United States District Court for the Northern District of Florida (see *State of Fla. ex rel. Shevin* v. *Exxon Corp.* (5th Cir. 1976) 526 F.2d 266), had previously been transferred to the United States District Court for Connecticut.

[3]Based upon evidence submitted in connection with the motions to quash, the trial court apparently found that the original contract was executed in Florida. We say the "original" contract because there were two subsequent superseding agreements executed, one in January

Florida consumers. Between 1981 and 1983, Florida reached settlement agreements with twelve defendants, who together agreed to pay $4,170,000 in damages and legal costs to resolve Florida's claims for damages to public entities and consumers. In November 1986, Florida entered into a settlement with Gulf Oil in which Gulf agreed to pay $320,000 in cash and to deed to the state a parcel of real property said to be worth $630,000. The total principal amount of the settlements reached by Florida was $5,120,000." (*State of Fla.* v. *Dunne* (9th Cir. 1990) 915 F.2d 542, 543-544.)

Florida's participation in the litigation having come to an end,[4] and a dispute having thereafter developed concerning the compensation for Dunne's services, Dunne commenced this action by filing a complaint against Florida[5] in which he alleged causes of action for breach of the employment contract, fraud, negligence, and intentional infliction of emotional distress. Dunne also sought imposition of a constructive trust over the real property obtained in settling the litigation, and injunctive relief restraining defendants from continuing actions amounting to "committing waste on the property."

Defendants, with the assistance of California's Attorney General, made a special appearance pursuant to Code of Civil Procedure section 418.10 to contest jurisdiction. The trial court made a minute order granting defendants' motions to quash service of summons. This timely appeal is from that appealable order. (Code Civ. Proc., § 904.1, subd. (c).)

## REVIEW

On the theory that "state sovereignty ends at the state boundary," our Supreme Court has held that "sister states who engage in activities within California . . . are subject to suit in California courts with respect to those activities." (*Hall* v. *University of Nevada* (1972) 8 Cal.3d 522, 525, 524 [105 Cal.Rptr. 355, 503 P.2d 1363, 81 A.L.R.3d 1234], cert. den. (1973) 414 U.S. 820 [38 L.Ed.2d 52, 94 S.Ct. 114].) The exertion of such jurisdiction over a party state must comport with the "minimum contacts" test of *International*

of 1980 and the last in January of 1983. The record does not indicate where the second and third agreements were formally executed.

[4] It appears that in 1986 the oil companies won a summary judgment. (*In re Petroleum Products Antitrust Litigation* (C.D.Cal. 1986) 656 F.Supp. 1296, revd. *sub nom. In re Coordinated Pretrial Proceedings* (9th Cir. 1990) 906 F.2d 432.) Florida did not participate in the appeal by other states, electing instead to have the litigation terminate with a series of voluntary and involuntary dismissals.

[5] In addition to the state, Dunne also named as defendants Robert Butterworth and Jerome Hoffman, the current Attorney General and Assistant Attorney General, respectively. For purposes of simplicity, the state and these individuals will hereinafter be referred to collectively as "defendants" except where reference to the state alone is appropriate.

*Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057]: "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*Id.* at p. 316 [90 L.Ed. at p. 102] [citing and quoting *Milliken* v. *Meyer* (1940) 311 U.S. 457, 463 (85 L.Ed. 278, 283, 61 S.Ct. 339, 132 A.L.R. 1357)].) Dunne's invocation of what he characterizes as in rem jurisdiction over the parcel of Florida real estate must also satisfy this test. (See *Shaffer* v. *Heitner* (1977) 433 U.S. 186, 212 [53 L.Ed.2d 683, 703, 97 S.Ct. 2569]; *Hanson* v. *Denckla* (1958) 357 U.S. 235, 246-250 [2 L.Ed.2d 1283, 1293-1296, 78 S.Ct. 1228].)[6]

■ Personal jurisdiction is commonly categorized as being either general or specific. Jurisdiction is said to be general when it will encompass any cause of action against the defendant, and is called specific when the particular cause of action arises out of or relates to the defendant's acts, ties, or connections to the forum state. (See *Helicopteros Nacionales de Colombia* v. *Hall* (1984) 466 U.S. 408, 414 [80 L.Ed.2d 404, 410-411, 104 S.Ct. 1868] [text & fns. 8-9]; *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147-148 [127 Cal.Rptr. 352, 545 P.2d 264].) ■ We test for specific jurisdiction by examining the relationships between this litigation, these defendants, and California. (See *Calder* v. *Jones* (1984) 465 U.S. 783, 786-788 [79 L.Ed.2d 804, 810-811, 104 S.Ct. 1482]; *In re Marriage of Martin* (1989) 207 Cal.App.3d 1426, 1437 [255 Cal.Rptr. 720].) Dunne presents this trilateral relationship in these terms: Florida voluntarily came to California for the sole and express purpose of prosecuting the antitrust litigation; contracted with him, a California attorney, to represent it in that litigation; was an active participant in that litigation for approximately 10 years; derived substantial economic benefit from the settlements negotiated during the course of that litigation; and then breached its contract with him, thereby causing him, a California resident, foreseeable damage which he suffered in California. This depiction is accurate.

Defendants make three arguments against jurisdiction. *First*, defendants point out that Dunne at the time he was hired, was not admitted to practice law in California although he was an experienced antitrust litigator. This

---

[6]Strictly speaking, what Dunne is after vis-à-vis the Florida parcel is "[a] judgment *quasi in rem* [which would] affect[ ] the interests of particular persons in designated property." (*Hanson* v. *Denckla, supra,* 357 U.S. 235 at p. 246, fn. 12 [2 L.Ed.2d at p. 1293].) For purposes of jurisdiction, distinctions between in personam, in rem, and quasi in rem are now largely academic. (See *Shaffer* v. *Heitner, supra,* 433 U.S. 186 at p. 212 [53 L.Ed.2d at p. 703] ["all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe*"].)

could not have overly bothered Florida when it executed the "Contract for Counsel," for why would it engage Dunne unless it had the expectation that Dunne would—as he obviously did—become a member of the California State Bar, and thus authorized to represent Florida's legal interests? Dunne's status as an attorney licensed by California is far less significant than his unquestioned status as a resident of California.

*Second*, defendants insist that Florida did not bring its litigation to California as the product of free and voluntary choice, but as the "hostage" to an order from the federal Judicial Panel on Multidistrict Litigation. But the written opinion of that entity paints a different picture: By the time Florida filed its action in federal district court in Florida, the antitrust actions filed by the other states had already been transferred to Connecticut and were being considered for retransfer to California. Florida then "requested . . . to have [its] action included in these proceedings" and in fact "favor[ed] retransfer" to California. (See *In re Petro. Products Antitrust Litigation, supra*, 419 F.Supp. 712 at pp. 713-715 & fn. 2.) Thus Florida, knowing that its case would be included in this pack and would be tried in a state other than Florida, was if anything more willing to go to California than Connecticut. Florida was not a hostage taken to California, it asked to come here to litigate its claims.

*Third*, defendants find it significant that the original contract was executed in Florida.[7] In any event, the place where a contract is executed is of far less importance than where the consequences of performing that contract come to be felt. (See *Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 478-479 [85 L.Ed.2d 528, 544-545, 105 S.Ct. 2174].)

The United States Supreme Court has emphasized that "with respect to interstate contractual obligations . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to . . . sanctions in the other State for the consequences of their activities." (*Burger King Corp.* v. *Rudzewicz, supra*, 471 U.S. 462 at p. 473 [85 L.Ed.2d at p. 541] [citing and quoting *Travelers Health Assn.* v. *Virginia* (1950) 339 U.S. 643, 647 (94 L.Ed. 1154, 1160-1161, 70 S.Ct. 927)].) By soliciting Dunne to work on its behalf, Florida purposefully directed his activity as a resident of California, a recognized basis upon which California may assert jurisdiction. (*Id.* at pp. 472-473 [85 L.Ed.2d at pp. 540-541].) That activity led to Dunne's work on Florida's behalf for approximately 10 years, certainly a period of sufficient

---

[7]This is puzzling since defendants also contend that the original contract was superseded by succeeding contracts, contracts whose place of formal execution remains uncertain. (See fn. 3, *ante.*)

duration to qualify as a "continuing relationship." (*Id.* at p. 473.) Dunne has alleged that the defendants thereafter breached the contract with him and committed various accompanying torts. In very similar circumstances the United States Supreme Court has found jurisdiction of this state to be constitutionally proper: "Here, the plaintiff is the focus of the activities of the defendants out of which the suit arises. . . . [T]he brunt of the harm, in terms both of [Dunne's] emotional distress and the injury to [his] professional reputation, was suffered in California. In sum, California is the focal point both of the [contract] and of the harm suffered. Jurisdiction over [defendants] is therefore proper in California based on the 'effects' of their Florida conduct in California." (*Calder* v. *Jones, supra*, 465 U.S. 783 at pp. 788-789 [79 L.Ed.2d at pp. 811-812].)

"The plaintiff, of course, has an interest in presenting his claim in court and in obtaining relief if it is warranted." (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 900 [80 Cal.Rptr. 113, 458 P.2d 57].) California has an equally apparent interest in providing a resident plaintiff with a forum for obtaining that relief. (*McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199].) The fact that Florida's antitrust litigation was conducted in California, and that defendants were involved in it, demonstrates that it is neither impractical nor unduly burdensome for defendants to respond to Dunne's action in a California courtroom. (See *id.* at pp. 222-223 [2 L.Ed.2d at pp. 225-226].)

The order is reversed.

Perley, J., and Reardon, J., concurred.