[No. D031136. Fourth Dist., Div. One. Nov. 8, 1999.]

DAVID J. STONE, Plaintiff and Appellant, v.
STATE OF TEXAS et al., Defendants and Respondents.

**COUNSEL**

Sagaser, Hansen, Franson & Jamison, Sagaser, Franson, Jamison & Jones, Howard A. Sagaser and Kimberly A. Gaab for Plaintiff and Appellant.

John Cornyn, Attorney General (Texas), Terence L. Thompson, Assistant Attorney General; Paul Plevin & Sullivan, Richard A. Paul and Lysha N. Weston for Defendants and Respondents.

## OPINION

McINTYRE, J.—David J. Stone, M.D., appeals a judgment of dismissal entered after the trial court granted the motion of the State of Texas and the University of Texas Health Center at Tyler (together Health Center) for an order quashing service of the summons. Dr. Stone contends the Health Center had sufficient contacts with California to justify the court's exercise of personal jurisdiction over it. We affirm.

### BACKGROUND

Dr. Stone practiced pediatrics in San Diego for 19 years. In May 1993, he received a letter from Merritt, Hawkins & Associates (Merritt), a physician search firm located in Texas, soliciting him for employment. Dr. Stone contacted Merritt and it advised him a staff position was available at the Health Center.

Dr. Stone and Dr. Robert Klein, chairman of the Health Center's department of pediatrics, spoke by telephone numerous times. Dr. Klein explained a benefit of the position was the reimbursement of college expenses for Dr. Stone's children. In July 1993, Dr. Stone traveled to Tyler for an interview.

The Health Center sent Dr. Stone a letter offering him a one-year untenured position as an associate professor of pediatrics. The offer was silent regarding college expense reimbursement. Dr. Stone signed the offer as "accepted," but sent an accompanying letter making his acceptance contingent upon the inclusion of college expense reimbursement, among other things. Dr. Stone "viewed the offer of potential tuition reimbursement and college expenses of $200,000 as a critical part of the overall wage and benefit package."

In a responsive letter, the Health Center verified that college expense reimbursement was a benefit of the position. It also cautioned, "we are a State institution and, therefore, if the legislature mandates that we make some adjustment or change in the benefits package, then we are obligated by law to do so."

Dr. Stone began working for the Health Center in August 1994. In mid-September 1994, he signed a "Memorandum of Appointment" for a one-year position, to expire on August 31, 1995. The Health Center reappointed him in September 1995 and September 1996.

In January 1997, the Health Center significantly reduced the college expense benefit. As a result, Dr. Stone resigned. However, he continued to reside and practice in Texas.

Dr. Stone brought this suit against the Health Center for breach of contract, breach of the implied covenant of good faith and fair dealing and violation of Labor Code section 970. The statute provides in part: "No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either:

" . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) The length of time such work will last, or the compensation there-for[.]"

The court granted the Health Center's motion for an order quashing service of summons. It found the Health Center lacked minimum contacts with California, and alternatively, the exercise of personal jurisdiction over it would be unfair. The court then entered a judgment of dismissal.

## DISCUSSION

California's long-arm statute permits courts to exercise jurisdiction over nonresidents on any basis not inconsistent with the federal or state Constitutions. (Code Civ. Proc., § 410.10.) Under the federal Constitution's due process clause, the court may assume jurisdiction over a nonresident if he or she has constitutionally sufficient "minimum contacts" with the forum state. (*Goehring* v. *Superior Court* (1998) 62 Cal.App.4th 894, 904 [73 Cal.Rptr.2d 105].) " 'The defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." [Citation.]' [Citations.]" (*Ibid.*)

In his opening brief, Dr. Stone states specific jurisdiction applies, and thus "it is not necessary to undertake an analysis of whether the [Health Center was] subject to general jurisdiction." Accordingly, we do not consider his contradictory argument that the court improperly denied his request to conduct discovery of any facts justifying the exercise of general jurisdiction.

"If the nonresident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, he or she still may be subject to the *specific* jurisdiction of the forum, if the defendant has purposefully availed himself or herself of forum benefits

[citation], and the 'controversy is related to or "arises out of" a defendant's contacts with the forum.' [Citations.]" (*Vons Companies, Inc.* v. *Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 446 [58 Cal.Rptr.2d 899, 926 P.2d 1085], original italics.)

■ "When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction. [Citation.] Once facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. [Citation.]" (*Vons Companies, Inc.* v. *Seabest Foods, Inc.*, *supra*, 14 Cal.4th at p. 449.) Where the evidence is undisputed, as here, the jurisdiction question is purely one of law subject to de novo review. (*Ibid.*)

Dr. Stone argues that the Health Center is subject to the court's jurisdiction because his employment contract was formed in California. However, his signing the Health Center's employment offer as "accepted" did not form a contract. Rather, he sent a counteroffer seeking increased benefits and the Health Center agreed to some additional terms but not others. It appears the contract was not consummated until Dr. Stone signed the Memorandum of Appointment in Texas. (See *Michelin Tire Co.* v. *Coleman & Bentel Co.* (1919) 179 Cal. 598, 603 [178 P. 507] [contract formed where last act in its execution performed].) In any event, the place of contracting is not dispositive. (*Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 478-479 [105 S.Ct. 2174, 2185-2186, 85 L.Ed.2d 528].) ■ "[T]he place where a contract is executed is of far less importance than where the consequences of performing that contract come to be felt." (*Dunne* v. *State of Florida* (1992) 6 Cal.App.4th 1340, 1345 [8 Cal.Rptr.2d 483].)

■ We conclude Dr. Stone failed to meet the *purposeful availment* prong of the minimum contacts test. ■ " ' "Purposeful availment" requires that the defendant "have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." ' [Citation.] A contract with an out-of-state party does not automatically establish purposeful availment in the other party's home forum. [Citations.] Rather, a court must evaluate the contract terms and the surrounding circumstances to determine whether the defendant purposefully established minimum contacts within the forum. Relevant factors include prior negotiations, contemplated future consequences, the parties' course of dealings, and the contract's choice-of-law provision. [Citation.]" (*Goehring* v. *Superior Court, supra*, 62 Cal.App.4th at p. 907, citing *Burger King Corp.* v. *Rudzewicz, supra*, 471 U.S. at pp. 478-482 [105 S.Ct. at pp. 2185-2187.)

" '[W]ith respect to interstate contractual obligations . . . parties who "reach out beyond one state and create continuing relationships and obligations *with citizens of another state*" are subject to . . . sanctions in the other

State for the consequences of their activities.' [Citations.]" (*Dunne* v. *State of Florida, supra,* 6 Cal.App.4th at pp. 1345-1346, italics added.) Due process requires a "substantial connection" between the contract at issue and the forum state. (*McGee* v. *International Life Ins. Comp.* (1957) 355 U.S. 220, 223 [78 S.Ct. 199, 201, 2 L.Ed.2d 223].) In *McGee,* a life insurance policy was delivered in California, the premiums were mailed from here and the insured remained a resident here until his death. The court held "California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims." (*Ibid.*)

██ Notably, all future consequences of Dr. Stone's employment contract were in Texas. He was required to reside and practice there and his position was subject to the laws of that state. Under analogous facts, the court in *Stanley Consultants, Inc.* v. *Superior Court* (1978) 77 Cal.App.3d 444, 451 [143 Cal.Rptr. 655], observed: "To hold that a foreign corporation has subjected itself to the judicial jurisdiction of California by the simple act of employing a California resident to perform services not within the State of California would be totally inconsistent with the Constitutions of this state and of the United States[.]"

Moreover, Dr. Stone's suit is based on the Health Center's alleged breach of his *third* one-year employment contract. That contract did not arise out of the Health Center's initial recruitment of Dr. Stone in California. Rather, it was entered into in Texas more than two years after Dr. Stone established residency there. The Health Center's reappointment of a Texas resident would not give it fair warning it could be subjected to this state's jurisdiction. A lack of minimum contacts precluded the court from exercising jurisdiction over the Health Center.

The cases Dr. Stone relies on are distinguishable. In *State of Oregon* v. *Superior Court* (1994) 24 Cal.App.4th 1550 [29 Cal.Rptr.2d 909] (disapproved of on other grounds in *Vons Companies, Inc.* v. *Seabest Foods, Inc., supra,* 14 Cal.4th at p. 465), the plaintiff was a California resident, her son retained his California residency after being recruited here to play basketball for Oregon State University and he suffered a fatal stroke while playing a game here. Unlike the situation in this case, the nonresident defendants' forum-related activities created ongoing obligations to California residents. (*State of Oregon* v. *Superior Court, supra,* 24 Cal.App.4th at pp. 1557-1558.) In *Martin* v. *Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472 [108 Cal.Rptr. 23], the nonresident defendant recruited the plaintiff in California to play professional football for it. The court's exercise of jurisdiction, however, was also premised on the required performance of the contract in California and the defendant's substantial economic activity here (*id.* at p. 475), factors absent in this case.

While the lack of minimum contacts is dispositive, we also note the assertion of jurisdiction over the Health Center would be unreasonable. The burden on the Health Center to defend against Dr. Stone's claims in California would be considerable. Further, California lacks interest in a contract dispute between Texas residents where there was no untoward effect here. Additionally, contrary to Dr. Stone's view, California has no public policy reason to hold the Health Center answerable to his claim under Labor Code section 970. Again, Dr. Stone's third appointment is at issue, and thus it appears he was not induced to move to Texas by any fraudulent representations. (See *Vons Companies, Inc.* v. *Seabest Foods, Inc., supra,* 14 Cal.4th at p. 476; *Goehring* v. *Superior Court, supra,* 62 Cal.App.4th at pp. 908-909.)

## DISPOSITION

The judgment is affirmed. Dr. Stone is to pay the Health Center's costs on appeal.

Nares, Acting P. J., and McDonald, J., concurred.