Filed 3/4/21  Alexandria Real Estate etc. v. Bugsby Property, LLC CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ALEXANDRIA REAL ESTATE EQUITIES, INC. et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>BUGSBY PROPERTY, LLC,<br><br>    Defendant and Respondent. | B304839<br><br>(Los Angeles County Super. Ct. No. 19STCV05246) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard J. Burdge, Jr., Judge.  Affirmed.

Gibson, Dunn & Crutcher, James P. Fogelman and William F. Cole for Plaintiffs and Appellants.

RJM Litigation Group and Richard J. Mooney for Defendant and Respondent.

\* \* \* \* \* \*

The trial court dismissed an out-of-state limited liability company (LLC) as a defendant after finding it had insufficient contacts with the State of California to be subject to personal jurisdiction. The plaintiff challenges this ruling. Although the record does not *compel* this ruling, it certainly *supports* the ruling. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *The parties*

Joel Marcus (Joel) is the founder and Executive Chairman of Alexandria Real Estate Equities, Inc. (Alexandria).[1] Alexandria is in the business of developing and managing real estate for use by the "life sciences and technology sectors." Alexandria is a corporation; it was formed in Maryland and its principal place of business is in Pasadena, California.

Steven Marcus (Steven) is the founder and sole manager of Bugsby Property, LLC (Bugsby). Bugsby is in the business of "private investment." Bugsby has an operating agreement that lists Steven and his wife as its sole "members." However, Bugsby has no officers, no directors, and no managing board; its two members only meet "informal[ly]" and have never passed a resolution or kept minutes; it has no employees, although it once contracted with an individual for less than a year but never compensated him; it does not prepare or maintain financial statements and has no payroll records; it maintains a bank account but Steven cannot recall the last time any money went into or out of that account; and Steven is its only manager and the only person to receive its services. From the time of its

_____

[1] Because this case involves family members with the same last name, we use first names for clarity. We mean no disrespect.

creation in October 2012 to June 2017, Bugsby was owned 97 percent by Steven and 3 percent by his wife; in June 2017, Steven transferred his ownership to his wife as a gift. Bugsby is an LLC incorporated in Delaware, with its principal office in New York, and its principal place of business in London, UK.

Steven is Joel's son.

**B.** *"Project Affirmed"*

While Steven was visiting Joel's home in California over the Thanksgiving weekend in 2013, Joel asked Steven if he would be willing to provide "strategic advice" "to Alexandria with respect to certain potential programmatic joint ventures." Steven agreed to do this project, which the parties have subsequently called "Project Affirmed." Although Steven agreed that *his* sole remuneration for doing the project would be his father's "appreciation" as well as "the exposure" and "credit" the project would "bring[]," the parties did not contemporaneously discuss whether Steven was undertaking the project on behalf of Bugsby or how, if at all, *Bugsby* would be compensated.

Within a few weeks, Steven transmitted to Joel a PowerPoint presentation that set forth Steven's investment strategy for Alexandria and that was to be shared with potential Alexandria investors. Steven did research for the project by speaking with potential investors at a New York conference, and prepared the PowerPoint presentation itself from his home in London.

Consistent with Steven's belief that he had undertaken the project for Bugsby (rather than purely in his individual capacity), the cover slide of the PowerPoint presentation listed its author as "Bugsby Property LLC – Steven Marcus."

3

About a week later, Joel e-mailed Steven and asked him not to "use [B]ugsby on stuff with [him]."

### C.   *Post-project contractual negotiations*

After Steven had completed Project Affirmed, one of Alexandria's lawyers sent Steven two written agreements—one for Steven individually and one for Bugsby.

The agreements purported to "supersede[]" the prior oral agreements regarding Project Affirmed, and further specified that (1) the signatory would be "paid" "no compensation," (2) the signatory agreed not to disclose any of Alexandria's confidential information acquired at any time for the project, and (3) the signatory "consent[ed] to" "personal jurisdiction" in the federal and state courts in Los Angeles County and agreed to have "[a]ny disputes" resolved under California law (the "Superseding Agreement").  Joel told Steven that the express no-compensation provision was necessary to comply with Alexandria's anti-nepotism policy.

Steven and Alexandria's lawyer later had a conversation, and Alexandria's lawyer came away from that conversation believing that Steven had performed Project Affirmed in his "individual capacity."  Accordingly, the lawyer withdrew the proposed Superseding Agreement for Bugsby and clarified that the proposed Superseding Agreement for Steven applied to him as "an individual."

Steven signed a Superseding Agreement; Bugsby did not.

### D.   *Demands in 2019*

In January 2019, Steven and Bugsby demanded that Alexandria pay them $12 million as compensation for Project Affirmed.

4

On February 7, 2019, Steven and Bugsby followed up on their demand by suing Alexandria and Joel in New York state court, although this lawsuit was dismissed in August 2019 on forum non conveniens grounds.

## II.    Procedural Background

### A.    *Filing of complaint*

On February 13, 2019, Alexandria and Joel (collectively, plaintiffs) filed the underlying lawsuit in California against Steven and Bugsby and seeking declaratory relief that (1) Bugsby was Steven's alter ego, and (2) "no monetary compensation is or was owed to Steven or Bugsby."

### B.    *Motion to quash*

#### 1.    *The motion*

On March 25, 2019, Steven and Bugsby filed a motion to quash on the ground that the California courts lacked personal jurisdiction over them.[2]

#### 2.    *Initial ruling*

Following a full round of briefing, the trial court issued a tentative ruling finding personal jurisdiction over Steven but not Bugsby.  In its tentative ruling, the court reasoned that Steven was subject to personal jurisdiction in California because (1) he consented to jurisdiction in California in the Superseding Agreement, and (2) he "purposefully availed himself of the benefits of doing business in California" by orally agreeing to undertake Project Affirmed while in California, by "provid[ing]" his "advisory services" to California-based Alexandria, and by negotiating and signing the Superseding Agreement in

---

[2]    They also moved to dismiss the entire lawsuit on forum non conveniens grounds.  However, the trial court denied that motion and that denial is not before us in this appeal.

5

California. The court reasoned that Bugsby was *not* subject to personal jurisdiction in California because (1) it had not signed a Superseding Agreement, and (2) the contacts *Steven* had to California did "not necessarily" subject *Bugsby* to personal jurisdiction.

Following a hearing, the trial court deferred making a final ruling to allow the parties to conduct discovery on the issue of personal jurisdiction.

### 3. *Further ruling*

After the parties conducted discovery and submitted supplemental briefs, the trial court issued a further tentative ruling that it ultimately adopted as its final ruling.[3]

In addition to sticking with its prior ruling that Steven was subject to personal jurisdiction in California, the court also stuck with its prior ruling that it lacked personal jurisdiction over Bugsby and rejected both of plaintiffs' arguments to the contrary. First, plaintiffs had asserted that Steven's contacts should be imputed to Bugsby on the ground that Bugsby was Steven's "alter ego." The court found that Steven and Bugsby had a "unity of interest" because "[t]he entire evidentiary record shows that Bugsby is really a vehicle created and controlled by Steven and only operates through his services," but went on to rule that "recognizing Bugsby's separateness as an entity does not work an injustice on [p]laintiffs" or otherwise lead to an "inequitable result" because plaintiffs knew Steven did work for Bugsby in December 2013, accepted the PowerPoint presentation purportedly prepared by Bugsby, and knew that Bugsby never signed the Superseding Agreement plaintiffs subsequently

---

[3] The court simultaneously denied Steven's and Bugsby's motion to disqualify plaintiffs' counsel.

proposed for its signature.  Second, plaintiffs had asserted that *Bugsby itself* had minimum contacts with the State of California. The court rejected this argument at the hearing, finding that Bugsby itself had not "do[ne] anything here."

### C.  *Appeal*

After the trial court entered its order dismissing Bugsby as a defendant, plaintiffs filed this timely appeal.

## DISCUSSION

Plaintiffs argue that the trial court erred in granting Bugsby's motion to quash due to lack of personal jurisdiction.

California grants to its courts the power to assert personal jurisdiction as far as the United States Constitution allows. (Code Civ. Proc., § 410.10; *Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 583 (*Integral Development*) [California's "long-arm statute 'manifests an intent to exercise the broadest possible jurisdiction,' limited only by constitutional considerations of due process"].)  The federal Constitution upholds the exercise of personal jurisdiction over an out-of-state defendant as long as "the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" (*Goodyear Dunlop Tires Operations, S.A. v. Brown* (2011) 564 U.S. 915, 923, quoting *Int'l Shoe Co. v. Wash.* (1945) 326 U.S. 310, 316.)  "Minimum contacts exist where the defendant's conduct in, or in connection with, the forum state is such that the defendant should reasonably anticipate being subject to suit in that state." (*BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 429 (*BBA Aviation*).)  There are two types of personal jurisdiction: (1) "general or all-purpose

7

jurisdiction," and (2) "specific or conduct-linked jurisdiction."
(*Daimler AG v. Bauman* (2014) 571 U.S. 117, 122 (*Daimler*).)

Plaintiffs assert that the California courts may exert
specific jurisdiction over Bugsby, despite its being an out-of-state
LLC, because (1) those courts may exert specific jurisdiction over
Steven regarding Project Affirmed,[4] and Bugsby is Steven's "alter

---

[4]     Bugsby challenges this premise, arguing that the trial
court erred in finding that Steven was subject to personal
jurisdiction in California because (1) Steven's *consent* to
jurisdiction in the Superseding Agreement was coerced, (2) the
Superseding Agreement operates only *prospectively*, and thus did
not cover Steven's work on Project Affirmed prior to signing that
agreement, and (3) the Superseding Agreement is between
Steven *and Alexandria*, and thus cannot enable *Joel* to sue
Steven.  These arguments are not well taken.  Bugsby did not
raise—and did not supply evidence to support—the first
argument until its supplemental brief before the trial court, and
did not raise the third argument to the trial court at all; Bugsby
has consequently forfeited those two arguments.  (*Jay v.
Mahaffey* (2013) 218 Cal.App.4th 1522, 1537-1538 [argument
supported by evidence presented for the first time in reply papers
before the trial court is forfeited]; *Bogacki v. Board of Supervisors*
(1971) 5 Cal.3d 771, 780 [arguments generally not to be
considered for first time on appeal, particularly "when the new
theory depends on controverted factual questions"].)  Even if we
overlooked this forfeiture, Bugsby's first and third arguments at
most knock out specific jurisdiction over Steven based on his
consent, but the trial court also independently found jurisdiction
proper based on Steven's purposeful availment.  Bugsby's second
argument is flatly contradicted by the plain terms of the
Superseding Agreement, which expressly deals with Project
Affirmed and supersedes the prior oral agreement; because all
work on Project Affirmed was completed before the Superseding
Agreement was executed, accepting Bugsby's argument would

ego,"[5] and (2) Bugsby's own conduct renders it subject to specific jurisdiction regarding Project Affirmed.

In reviewing a trial court's dismissal for lack of personal jurisdiction, we independently review the court's legal rulings and its application of the law to its factual findings (*Integral Development*, *supra*, 99 Cal.App.4th at p. 585; *Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 553), but review those factual findings only for substantial evidence (*Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 17; *Claremont Press Publishing Co. v. Barksdale* (1960) 187 Cal.App.2d 813, 817; see also *Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 155 (*Hasso*) [alter ego findings reviewed for substantial evidence]). In assessing whether factual findings are supported by substantial evidence, we ask only whether there is

render the Superseding Agreement a complete nullity, and courts may not construe contracts in a way that render them wholly ineffective (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 503; Civ. Code, § 1641).

5      Plaintiffs have elected to rely upon an alter ego theory. Thus, plaintiffs have waived any argument based on the theories of agency or representative services because those theories are both grounded in the law of agency and because agency is analytically distinct from alter ego. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 540-543 & fn. 11 (*Sonora*) [describing agency and representative services theories]; *BBA Aviation*, *supra*, 190 Cal.App.4th at p. 430 [describing representative services theory]; *Paneno v. Centres for Academic Programmes Abroad Ltd.* (2004) 118 Cal.App.4th 1447, 1456 [same]; *F. Hoffman-La Roche, Ltd. v. Superior Court* (2005) 130 Cal.App.4th 782, 797 [noting "distinct" "analysis" of agency and alter ego theories].)

"'evidence that a rational trier of fact could find to be reasonable, credible, and of solid value . . . to support the finding'" and do so while "view[ing] the evidence in the light most favorable to the [finding]." (*San Diegans for Open Government v. City of San Diego* (2016) 245 Cal.App.4th 736, 740.)

As the plaintiffs below, plaintiffs bore the burden of producing evidence sufficient to establish a factual basis for the trial court's exertion of personal jurisdiction over Bugsby (*BBA Aviation*, *supra*, 190 Cal.App.4th at pp. 428-429; *Sonora*, *supra*, 83 Cal.App.4th at p. 540); as the appellants here, plaintiffs bear the burden of showing that the trial court's refusal to exert jurisdiction was error (*Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601).

## I.     Alter Ego

In its most typical iteration, the alter ego doctrine empowers courts to treat a collective entity (such as a corporation or LLC) as the "alter ego" of an individual for purposes of holding *the individual* responsible for the collective entity's conduct; in this regard, the alter ego doctrine allows a court to "pierce[]" "the 'corporate veil.'" (*Sonora*, *supra*, 83 Cal.App.4th at p. 538.)  On the basis of this doctrine, courts have found that their personal jurisdiction over a collective entity—including specific jurisdiction—can justify exertion of personal jurisdiction over the individual who was using the corporation as his or her alter ego. (*Id.* at pp. 537-543; see *Daimler*, *supra*, 571 U.S. at p. 135, fn. 13 [noting that "[a]gency relationship[] . . . may be relevant to the existence of *specific* jurisdiction"].)  Plaintiffs here are seeking to apply the alter ego doctrine in the reverse situation—that is, to hold *the collective entity* responsible for the *individual*'s conduct

10

by treating specific jurisdiction over Steven as tantamount to specific jurisdiction over Bugsby.

In the reverse veil piercing situation at issue here, a court may treat an LLC (or a corporation) as the "alter ego" of its members (or shareholders) only if (1) there is "'such unity of interest and ownership that the separate personalities of the [LLC] and the individual no longer exist'"; and (2) "'an inequitable result will follow'" "'if the acts [of the individual] are treated as those of the [individual] alone.'" (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300; *Sonora*, *supra*, 83 Cal.App.4th at p. 538; see also *Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 221-222 (*Curci Investments*) [employing this test in the reverse veil piercing situation].) Application of the alter ego doctrine ""'var[ies] according to the circumstances of each case.'" [Citation.]" (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1248.) Because the alter ego doctrine marks a departure from the presumption that collective entities are legally distinct from their members and shareholders, piercing the veil is "'an extreme remedy, [to be] sparingly used'" (*Hasso*, *supra*, 227 Cal.App.4th at p. 155), and the party seeking to invoke it generally bears a "heavy burden" (*Santa Clarita Organization for Planning & Environment v. Castaic Lake Water Agency* (2016) 1 Cal.App.5th 1084, 1105). In the reverse veil piercing context, that burden is even more onerous and its use should be "'extremely rare.'" (*Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, 1518; *Curci Investments*, at pp. 221-222.)

### A. *Unity of interest and ownership*

In assessing whether there is a "unity of interest and ownership" between the collective entity and the individual,

11

courts look to the totality of the circumstances. (*Sonora, supra*, 83 Cal.App.4th at p. 539.) Included among those relevant circumstances are (1) whether organizational formalities have been observed and organizational records maintained, (2) whether the collective entity has any employees, officers, or operating funds, and (3) whether the collective entity was used as a "mere shell or conduit" for the individual's affairs. (*CADC/RADC Venture 2011-1 LLC v. Bradley* (2015) 235 Cal.App.4th 775, 789; *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 512-513; *Sonora*, at pp. 538-539.)

Substantial evidence supports the trial court's finding that Bugsby and Steven share a "unity of interest and ownership." Bugsby has not observed any organizational formalities and maintains no organizational records; it has no employees or officers; and its sole manager and the only person who receives its services is Steven. Bugsby points to evidence that could support a contrary conclusion, such as the facts that Bugsby has a bank account and filed tax returns. Bugsby's argument rests on an invalid premise: "The fact that there was substantial evidence in the record to support a contrary finding does not compel the conclusion that there was no substantial evidence to support the judgment." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.) Nor are we permitted to re-weigh the evidence ourselves to come to a conclusion more to Bugsby's liking. (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1043.)

### B. *Inequitable result*

Even when the collective entity and the individual share a "unity of interest and ownership," courts will apply the alter ego doctrine only when "adherence to the fiction of the[ir] separate existence . . . would promote injustice [citation] or bring about

12

inequitable results [citation]." (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1074.) What matters is whether the *result* is unjust or inequitable, not whether the individual acted with any fraudulent or other nefarious intent. (*Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 816.)

Substantial evidence supports the trial court's finding that treating Bugsby separately from Steven would not lead to an unjust or inequitable result. Steven had created Bugsby more than a year before Joel asked Steven to work on Project Affirmed. Both Steven—and, significantly, *Alexandria*—believed that Steven's work was not solely in his individual capacity: The cover page of the PowerPoint presentation stated that Steven was acting for Bugsby, and Alexandria's lawyer initially sent Superseding Agreements to both Steven and Bugsby. Although Steven clarified that *he* would not seek compensation for Project Affirmed, Alexandria did not undertake its efforts to eliminate— or even to clarify—Bugsby's role until after the project was completed. Given the potential uncertainty regarding whether Bugsby and Steven had separate roles at the outset of the project as well as Alexandria's (and Joel's) failure to clarify those roles until after the project was done, the trial court had a basis for finding it would not be unjust or inequitable to allow Bugsby to have a separate role from Steven in this lawsuit for purposes of personal jurisdiction.[6]

---

[6] By making this observation, we express no view on whether Steven's repeated concessions that he was doing the Project Affirmed for accolades rather than compensation ultimately preclude Bugsby, for whom Steven was an agent, from collecting any compensation itself.

Plaintiffs offer two arguments in response.

First, plaintiffs argue that a result is inequitable if the collective entity is used as "a cloak or disguise for the evasion of contracts or other obligations" (*Wilson v. Stearns* (1954) 123 Cal.App.2d 472, 486), and that Steven is now using Bugsby's existence as a separate entity to evade Steven's promise not to seek compensation; what is more, plaintiffs continue, Steven's failure to reveal his plan to seek compensation *on Bugsby's behalf* also constitutes a fraud on Alexandria. This argument ignores our standard of review, which requires us to view the record in the light most favorable to the trial court's ruling. In that light, the record shows that the original oral agreement may have involved Steven, Bugsby, or both; that Steven and Alexandria acknowledged the potential that Steven may have been working on behalf of Bugsby; and that neither Alexandria nor Joel took action to eliminate Bugsby as a potential party to the contract until that contract had been fully performed. On these facts, Steven's promise not to seek compensation expressed no more than his intent not to seek compensation *as an individual*, such that his current desire to collect for Bugsby is not an evasion of that promise. And on these facts, Steven's failure to point out ambiguity in the parties' contractual arrangement of which Alexandria and Joel were already aware is not fraud. (E.g., *Hagge v. Drew* (1945) 27 Cal.2d 368, 382 [party is liable for nondisclosure when entering into contract only if, among other things, "he is aware" of facts and "the other is ignorant of th[ose] facts"].)

Second, plaintiffs argue that the trial court's "unity of interest" finding means that Bugsby *is* Steven, and thus should be treated as such. To accept this argument, however, is to treat

14

the "unity" element as dispositive and to ignore the second prerequisite to applying the alter ego doctrine.

## II.    Purposeful Availment

A California court may exercise specific jurisdiction over an out-of-state defendant only if the defendant (1) "'"'purposefully availed [itself] of forum benefits'"'" (*Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 598 (*Bombardier*), quoting *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 446), (2) "'"'"the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" [citation]'"'"'" (*Bombardier*, at p. 598), and (3) the exercise of jurisdiction would be reasonable because "'"'the assertion of personal jurisdiction would comport with "fair play and substantial justice"'"'" [citations].' [Citation.]"  (*Ibid.*; *Szynalski v. Superior Court* (2009) 172 Cal.App.4th 1, 7.)

Substantial evidence supports the trial court's finding that Bugsby did not purposefully avail itself of the benefits of California as a forum.  To be sure, Bugsby—through Steven as its manager and agent—claims that it entered into the oral contract with Alexandria, and acknowledges that this contract was formed in California and that "courts consistently exercise personal jurisdiction over corporations based upon their agents' activities within the forum state" (*Magnecomp Corp. v. Athene Co.* (1989) 209 Cal.App.3d 526, 535 (*Magnecomp*)).  But it is well settled that Bugsby's conduct in forming "'[a] contract with an out-of-state party [(that is, with Alexandria in California)] does not automatically [by itself] establish purposeful availment in the other party's home forum.' [Citations.]"  (*Goehring v. Superior Court* (1998) 62 Cal.App.4th 894, 907; *Stone v. Tex.* (1999) 76 Cal.App.4th 1043, 1048.)  Something more is required, and the

record supports the trial court's finding that this "something more" was absent here. As Bugsby's agent, Steven did the work on Project Affirmed in New York and London—not in California. And, unlike Steven, Bugsby never signed a Superseding Agreement containing forum selection and choice-of-law clauses that adopted a California forum and California law, respectively. What is more, the Superseding Agreement Steven signed was expressly limited to him "as an individual." (Cf. *Aluma Systems Concrete Construction of California v. Nibbi Bros. Inc.* (2016) 2 Cal.App.5th 620, 628 [principal may be liable for contracts signed by their agents].) Thus, the record supports the trial court's finding that, beyond entering into the oral contract, Bugsby has not "do[ne] anything" in California and hence did not purposefully avail itself of this forum.

Plaintiffs make two arguments in response. First, they repeat their argument that Bugsby *is* Steven, so they must be treated identically for purposes of personal jurisdiction. Because this is an argument based on *Bugsby's* purposeful availment, what *Steven* did in his individual capacity—that is, what he did above and beyond his capacity as Bugsby's agent—is irrelevant. And, as noted above, *Bugsby*'s refusal to sign the Superseding Agreement puts it on different footing than Steven. Second, plaintiffs urge that a defendant's commission of a tort constitutes purposeful availment, and Bugsby committed fraud. Plaintiffs are correct that "the commission of an intentional tort . . . directed at a California resident may provide sufficient minimum contacts to support the exercise" of specific jurisdiction (*Integral Development*, *supra*, 99 Cal.App.4th at p. 586; *Magnecomp*, *supra*, 209 Cal.App.3d at p. 535). However, and as explained above, Steven—as Bugsby's agent—did not commit

16

fraud by failing to tell Alexandria and Joel that their oral contract left open the possibility of liability to Bugsby when both Alexandria and Joel were already aware of that possibility.

## DISPOSITION

The judgment of dismissal of the case against Bugsby is affirmed. Bugsby is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

17